# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

———————————————————————————
——————————————————

**JOSEPH KIRCHNER,**

*Plaintiff,*

v.

**MIKE JOHNSON, et al.,**

*Defendants.*

Case: 1:25−cv−02735 JURY DEMAND
Assigned To : Reyes, Ana C.
Assign. Date : 8/19/2025
Description: TRO/PI (D−DECK)

**Civil Action No. 25-cv-_____**

———————————————————————————
——————————————————


**JOSEPH KIRCHNER**,

*Plaintiff,*

v. **Civil Action No. _____**

**MIKE JOHNSON**, in his individual and official capacity as Speaker of the United

States House of Representatives; **PAM BONDI**, in her individual and official capacity

as Attorney General of the United States; **THE UNITED STATES HOUSE OF**

**REPRESENTATIVES**; and **DOES 1-20**, unknown co-conspirators,

*Defendants.*

**RECEIVED**

AUG 19 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

1

## **PREFACE**

This complaint is based exclusively on defendants' recorded public admissions measured against plain federal statutory text. Johnson's demonstrably false technical legal claims while representing constitutional expertise, Trump's recorded confession of protecting "people associated" rather than victims, and their systematic coordination using identical linguistic manipulation create logical proof of criminal conspiracy using governmental authority.

While this complaint contains constitutional analysis explaining how these violations coordinate across branches, the case succeeds independently through defendants' admitted violations of clear statutory requirements. The constitutional framework reveals the systematic criminal enterprise structure that enabled and coordinated these statutory violations, making both analyses essential for comprehensive relief.

The extraordinary scope of systematic violations documented herein results from defendants' unprecedented comfort with public criminal admissions, demonstrating the governmental capture that makes judicial intervention essential before constitutional architecture replacement becomes irreversible through continued criminal enterprise operation.

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

### Under 42 U.S.C. § 1983, the Constitution, and Federal Law

## I. INTRODUCTION AND SUMMARY

1. House Speaker Mike Johnson terminated House Rules Committee proceedings to prevent voting on Epstein files despite 9-4 Republican supermajority that guaranteed Republican victory, while admitting "We're in lockstep with President Trump and his administration on these issues." This was not a vote's failure—it was a vote's erasure. Johnson's coordination with executive preferences to prevent democratic resolution while controlling the outcome violates Article I, Section 1's exclusive grant of legislative power to Congress and creates logical impossibility where preventing voting serves executive coordination rather than legislative independence. **Even if executive coordination served legitimate governmental purposes, Johnson's systematic abdication of Article I legislative duties to executive branch preferences constitutes per se constitutional violation because Article I, Section 1 requires "ALL legislative Powers...shall be vested in a Congress" independently of executive conduct or motivation.** This systematic subordination of Article I democratic process to executive criminal protection preferences eliminates all political explanations and proves criminal conspiracy to prevent accountability that would expose systematic criminal enterprise operations, **while creating independent constitutional violation through legislative duty abandonment regardless of executive branch conduct**.

2. Johnson's coordination with executive branch to accept Trump administration "credible evidence" filtering violates separation of powers by usurping core Article I oversight functions. Constitutional framework establishes that Congress has exclusive authority to evaluate evidence credibility for oversight purposes (2 U.S.C. §§ 192, 194), while executive branch authority is limited to document authentication (Fed. R. Evid. 901). FBI/DOJ investigation files are presumptively authentic through professional chain of custody and possess presumptive high credibility through professional investigative standards, yet Johnson's acceptance of executive credibility gatekeeping enables systematic criminal protection through invented executive authority over authentic government documents that appears nowhere in FOIA's nine specific exemptions (5 U.S.C. § 552(b)) as comprehensively demonstrated in Appendix IV or anywhere else in American jurisprudence.

3. Under Fed. R. Evid. 901, executive branch constitutional role regarding evidence is limited to authentication—establishing that documents are what they purport to be through chain of custody and official procedures. FBI/DOJ files satisfy authentication requirements through professional investigative standards and federal agency procedures. However, credibility determination—the weight and believability given to authentic evidence—belongs to the appropriate constitutional fact-finder: Congress for Article I oversight (2 U.S.C. §§ 192, 194), courts for judicial proceedings (Fed. R. Evid. 607), and agencies for administrative matters (5 U.S.C. § 556). Attorney General Bondi's November 22, 2024 pre-appointment confirmation of evidentiary facts followed by systematic reversal after appointment proves conscious constitutional duty abandonment rather than legitimate professional assessment. Executive branch claiming authority to

determine "credible evidence" for congressional oversight constitutes systematic usurpation of congressional fact-finding authority through invented constitutional powers that appear nowhere in separation of powers framework documented in Exhibit A-12.

4. Attorney General Bondi's November 22, 2024 pre-appointment statement that criminal associates "have no legal basis" for name protection unless they are "a child, a victim, or a cooperating defendant" followed by systematic post-appointment coordination protecting exactly the individuals she stated have no legal protection **meets federal criminal mens rea standards for conspiracy under 18 U.S.C. § 371** through conscious criminal conspiracy using professional capture methodology. Bondi demonstrated complete legal competence on the exact issue before coordination with Trump administration, then systematically abandoned her own stated legal analysis to enable criminal associate protection through governmental authority, **proving "knowingly" and "purposely" engaging in criminal conspiracy through deliberate reversal of her own correct legal analysis**. Bondi's conscious reversal of her own correct legal analysis within months of stating it **satisfies criminal intent requirements for conspiracy, fraud, and civil rights violations under federal criminal statutes**, violating Model Rule 1.1 (competence) and Model Rule 8.4(c) (dishonesty) through systematic violation of legal standards she demonstrably understood, **proving RICO criminal enterprise using professional capture requiring immediate criminal referral to state prosecutors independent of compromised federal apparatus** documented in Exhibit A-12.

5. Johnson's systematic abandonment of constitutional principles he previously articulated correctly creates **identical professional capture methodology to Attorney**

**General Bondi's legal standard abandonment**. Johnson's 2023 position establishing correct constitutional principle that citizens should "see for themselves what happened...rather than having to rely upon the interpretation of a small group of government officials" followed by 2025 systematic deference to identical "small group of government officials" (Trump, DOJ, FBI) while claiming "intellectual consistency" documented in Exhibit A-13 proves coordinated professional fraud across branches. **This professional capture pattern - demonstrating competence followed by systematic abandonment after coordination - mirrors Bondi's identical methodology of correct legal standards followed by systematic abandonment after Trump appointment**. Both legal professionals demonstrate complete understanding of correct constitutional/legal standards followed by conscious abandonment to serve criminal associate protection through governmental authority. **The criminal mens rea evidence established through Bondi's deliberate legal standard reversal validates that Johnson's identical professional fraud serves systematic criminal conspiracy coordination rather than individual professional error**. The statistical impossibility that two legal professionals would simultaneously abandon correct standards they previously articulated correctly, at coordinated timing serving identical criminal protection purposes, without providing any sufficient explanation for reversal, approaches mathematical zero without systematic coordination, proving RICO criminal enterprise using professional capture across separation of powers boundaries rather than legitimate governmental evolution documented in Exhibits A-4, H-2, I-1, A-12, A-13.

6. Johnson represents himself as a "litigator" and "constitutional law attorney" while claiming ignorance of evidence that any competent attorney would recognize as meeting

federal RICO prosecution standards. **Model Rule 1.1** professional competence requires attorneys recognize criminal association evidence routinely used for 20-year federal sentences, making Johnson's claimed ignorance systematic professional fraud designed to enable constitutional duty abandonment while maintaining legal credibility. More fundamentally, any competent litigator must understand the distinction between Fed. R. Evid. 901 (authentication) and Fed. R. Evid. 607 (credibility determination): executive branch authority extends only to document authentication while credibility assessment belongs to the constitutional fact-finder—Congress for Article I oversight. Johnson's acceptance of executive "credible evidence" filtering while possessing professional legal training proves conscious constitutional authority abandonment rather than legitimate professional limitation, violating both constitutional separation of powers and professional competence standards through systematic subordination of congressional fact-finding authority to executive criminal protection preferences documented in Exhibit A-2 and Appendix I.

7. Johnson's systematic professional fraud violates Model Rule 1.1 (competence) and Model Rule 8.4(c) (dishonesty) beyond reasonable doubt of legitimate professional error. Johnson's representation as "litigator" and "constitutional law attorney" while making four separate false technical claims creates professional misconduct requiring discipline: (1) claiming standard federal CSAM statutes are "wrong provisions" demonstrates either fundamental incompetence in basic federal law or systematic deception using professional authority; (2) claiming resolution "requires grand jury testimony release" when resolution explicitly provides redaction authority demonstrates either basic procedural ignorance or criminal fraud using false legal analysis; (3) claiming resolution

lacks "adequate victim protections" when resolution contains comprehensive protections demonstrates either inability to read legal text or systematic misrepresentation for criminal purposes; (4) claiming "the house rules resolution sets a good standard and requires all credible evidence to be released" (Ex. A-1, ¶35) when H.Res. 5 contains zero references to credible evidence (Ex. B-4) while actual congressional oversight authority derives from 2 U.S.C. §§ 192, 194, demonstrates systematic confusion between internal procedural rules and federal statutory authority that no competent attorney could accidentally make. The statistical impossibility of accidental comprehensive professional failure across four separate technical legal domains while exercising constitutional authority proves criminal conspiracy using professional fraud to abandon constitutional duties.

7A. Johnson creates constitutional impossibility through contradictory legal claims where the identical legal action (DOJ releasing grand jury materials through court procedures) is simultaneously "prohibited by law" when directed by Congressional resolution but "perfectly legal" when directed by Presidential order documented in Exhibits A-3, A-4. Johnson claims congressional resolution "requires the DOJ to release grand jury testimony. They are prohibited by law from doing so, so it is not the right approach" while simultaneously stating "the president has directed the Department of Justice to pursue the release of grand jury information and that is happening as we speak. In fact, the court is processing a DOJ's request for grand jury materials." This logical impossibility proves systematic professional fraud because federal law cannot change based on which branch initiates identical court petition processes under Federal Rule of Criminal Procedure 6(e). Johnson's own admission

that Trump's DOJ petition is legal proves that grand jury material release through court procedures is not prohibited by law, demonstrating systematic deception designed to prevent congressional oversight while coordinating with executive branch officials pursuing the identical legal action Johnson claims Congress cannot legally pursue.

8. Speaker Johnson's recorded confession "I've never seen the Epstein evidence. It wasn't in my lane" combined with his admission "There's no daylight between us and the White House," "We're in lockstep with President Trump," and "I agree with President Trump, with the Department of Justice, with the FBI, that you need all credible evidence and information out there" [Exhibits A-1, A-2, A-4] creates legal impossibility under Article I, Section 1 requiring "ALL legislative Powers herein granted shall be vested in a Congress." Johnson cannot simultaneously shut down Article I oversight based on admitted incompetence while coordinating with executive branch preferences, violating the constitutional mandate that legislative power belong exclusively to Congress rather than executive-legislative coordination. This systematic subordination of congressional authority to executive coordination serves criminal protection through willful abandonment of constitutional independence.

9. Trump's August 1, 2025 recorded admission "we don't want people to get hurt. You can't have people associated..." followed by immediate deflection to blame "bad people like Comey" constitutes direct confession of criminal conspiracy perfectly coordinated with Johnson's identical protective language about "associates." This admission creates concrete FOIA injury under 5 U.S.C. § 552 where Plaintiff is systematically denied authentic government information through confessed criminal motivation, proves

consciousness of criminal protection through immediate deflection when discussing associates, provides perfect validation of systematic criminal enterprise coordination, and demonstrates that genuine victim protection advocates prioritize victims first while Trump's associate protection priority proves criminal rather than legitimate motivation documented in Exhibit A-5.

10. Johnson's systematic coordination with Trump creates logical impossibility proving criminal rather than governmental motivation because Johnson cannot simultaneously believe Epstein crimes are real and serious (documented in Exhibit A-2: "Oh, it's not a hoax. Of course not. I mean, they're real victims here") while trusting evidence evaluation by Trump who consistently maintains Epstein is a "hoax." Trump's "hoax" claim requires proving inauthenticity—that FBI/DOJ evidence was fabricated or planted by hundreds of law enforcement officers in a massive conspiracy. Trump has presented zero evidence of such systematic law enforcement conspiracy. Unable to challenge authenticity (Fed. R. Evid. 901), Trump conflates it with credibility (Fed. R. Evid. 607), but Congress has exclusive authority over credibility assessment for Article I oversight (2 U.S.C. §§ 192, 194). Johnson, as a "constitutional law attorney," understands this distinction yet accepts Trump's impossible conflation. This fundamental logical contradiction eliminates all legitimate governmental explanations because no constitutional purpose could justify coordinating oversight with someone who denies basic facts requiring oversight. Johnson's coordination creates perfect logical trap where all possible defenses prove criminal intent: if Johnson genuinely trusts Trump's "hoax" assessment despite its legal impossibility, then Johnson's victim protection rhetoric constitutes systematic fraud; if Johnson believes crimes are real but coordinates with someone claiming "hoax" without

evidence, then Johnson's "trust" claims constitute systematic political cover for criminal coordination. Either logical path proves Johnson's coordination serves criminal associate protection through fraudulent rationales rather than constitutional compliance, creating logical impossibility of legitimate defense requiring immediate judicial intervention.

11. The systematic convergence during preparation of this constitutional complaint of Johnson's constitutional abandonment, Trump's criminal admissions, Maxwell's preferential prison transfer, FBI constitutional usurpation, and coordinated cabinet-level deflection provides perfect real-time validation of ongoing criminal enterprise using governmental authority. This coordination—occurring as constitutional violations are being documented for judicial review—transcends coincidental violations into documented criminal conspiracy proving active criminal enterprise operation that continues expanding during the period when accountability should be increasing, requiring immediate judicial intervention to prevent further criminal enterprise consolidation through continued governmental authority abuse.

12. The identical linguistic manipulation frameworks across Johnson (legislative), Trump (executive), Bondi (Attorney General), Duffy (cabinet-level), and Vance (executive leadership) create statistical impossibility of coincidental development when **all executive branch officials employ Speaker's exact deflection protocols and false legal terminology during official proceedings**. Vice President Vance's July 28, 2025 coordination using identical "credible information" filtering language and systematic deflection patterns documented in Exhibits A-15 and A-19 proves systematic criminal enterprise coordination across the entire executive branch rather than individual violations. **Attorney General Bondi's professional capture methodology -**

**demonstrating correct legal standards on November 22, 2024 followed by systematic abandonment after appointment - coordinates perfectly with Johnson's identical constitutional expertise abandonment, proving systematic professional fraud across separation of powers boundaries**. **Systematic coordination where Transportation Secretary, Vice President, and Attorney General all deploy Johnson's linguistic framework during official proceedings** combined with executive leadership deployment of identical false legal justifications and Attorney General systematic reversal of her own legal analysis proves systematic criminal enterprise rather than individual constitutional violations requiring immediate prosecution under RICO standards documented in Exhibits A-15, A-12.

13. Johnson's linguistic manipulation represents documented participation in "institutional DARVO" methodology studied across Catholic Church, Penn State, and USA Gymnastics scandals. Peer-reviewed research by Harsey & Freyd (2020) shows 72% of perpetrators use identical protective language coordination, with Johnson's specific formulation "threading a fine needle between exposing evil and protecting the innocent" mirroring nearly identical justifications used across institutional abuse cover-ups, proving systematic rather than coincidental criminal enterprise methodology using victim protection rhetoric to suppress evidence documented in Exhibit D-1.

14. Trump's 2006 recorded admissions of systematic appearance-based hiring ("A beautiful girl who was 17 or 18...I interviewed her anyway 'cause she was so pretty") combined with consciousness of wrongdoing ("this would be my form of alcoholism") provide direct evidence of decades-long recruitment operations targeting minors through employment-based access at Trump properties. Trump's explicit acknowledgment of

compulsive inappropriate behavior regarding youth hiring proves systematic criminal behavioral patterns rather than isolated incidents, while his detailed memory of teenage spa employee movements among massive resort operations proves criminal significance requiring owner-level intervention documented in Exhibit A-9. Johnson's constitutional duty abandonment protects these documented systematic recruitment operations from the constitutional oversight specifically designed to investigate and prevent exploitation of vulnerable populations, proving criminal protection motivation rather than legitimate victim protection concerns through systematic prevention of accountability that would expose ongoing criminal enterprise coordination.

15. Trump's "stolen worker" explanation fails objective business analysis because: (1) billionaire resort owners do not personally track teenage spa employees among hundreds of staff; (2) successful employee recruitment indicates superior conditions rather than theft requiring intervention; (3) business relationships routinely survive employee movement without owner-level permanent banishments; and (4) disproportionate response (lifetime social banishment) proves territorial protection of criminal enterprise operations rather than legitimate business competition documented in Exhibit A-8.

16. Deputy Attorney General Blanche's immunity grant to Maxwell while maintaining dual conflicts of interest violates *Young v. United States* requiring prosecutors without interests compromising justice. Blanche's former attorney-client relationship with Trump combined with current financial dependency on Trump ($180,000+ DOJ salary) creates per se disqualifying conflicts **under Supreme Court precedent when making prosecutorial decisions affecting his former client's criminal exposure. This systematic prosecutorial capture where the subject of investigation controls the**

**prosecutor's career and financial security through appointment authority violates Fourteenth Amendment due process requirements for neutral decision-makers**, creating structural impossibility of disinterested prosecution rather than legitimate prosecutorial independence documented in Exhibits A-10, B-5, B-6.

17. Maxwell's immediate transfer to minimum-security prison following cooperation about "100 names" while Trump simultaneously considered her pardon creates perfect quid pro quo validation coordinated with Johnson's constitutional duty abandonment. Deputy Attorney General Blanche's financial dependency on Trump ($180,000+ salary) while making immunity decisions affecting his former client violates *Young v. United States* precedent, creating systematic prosecutorial capture where investigation targets control their prosecutors documented in Exhibits A-10, B-5, B-6.

18. Texas Democrats face immediate civil arrest warrants for following 150+ years of constitutional precedent while maintaining Article I legislative independence from executive coordination and preserving legislative powers vested by the people, while Johnson faces zero enforcement for unprecedented constitutional violations through systematic abdication of Article I legislative powers to executive branch coordination and abandonment of legislative independence vested by popular sovereignty. Real-time escalation occurred August 18, 2025, when Democratic Rep. Nicole Collier was "locked inside the Texas Capitol" after refusing to sign a "permission slip" for mandatory DPS escort, with DPS requiring she "stay in the House chambers or inside her office" between legislative sessions. Other returning Democrats were required to sign permission slips and accept armed DPS escorts as a "guarantee that they will return to the House by 10 a.m. Wednesday for the next special session," creating indefinite detention system that

exceeds traditional civil arrest authority designed to compel attendance for active sessions. This systematic escalation from constitutional compliance receiving civil arrest to constitutional compliance receiving indefinite detention between sessions while constitutional violations receive governmental protection proves active governmental corruption that systematically punishes legislative independence and rewards executive subordination rather than constitutional principles requiring legislative co-equal status with executive branch.

19. Ordinary citizens face RICO prosecution with 20-year sentences for minimal criminal association evidence while Epstein associates with identical evidence receive coordinated governmental immunity. This systematic privilege—existing nowhere else in American law—creates two-tiered justice system violating fundamental constitutional principles through criminal associate protection.

20. FBI's claim of "no basis for release" uses authority appearing nowhere in FOIA's nine specific exemptions under 5 U.S.C. § 552(b) as systematically proven through exhaustive exemption analysis in Appendix IV, while simultaneously redacting Trump's name under privacy exemptions. This executive branch invention of legal authority superior to Article I congressional oversight proves systematic constitutional usurpation where agencies claim powers existing nowhere in constitutional text or statutory law, enabling coordinated evidence manipulation serving criminal associate protection documented in Exhibits I-1, C-2.

21. Trump's ownership of H.R. 1 "my one big beautiful bill" creates constitutional impossibility under Article I, Section 7 because constitutional text assumes congressional authorship requiring presidential review of unfamiliar work. From every constitutional

perspective, presidential-authored legislation should be delivered to Congress with the President's signature already attached, eliminating the entire Article I, Section 7 review framework and proving systematic constitutional process fraud where constitutional requirements become meaningless theater rather than enforceable constitutional duties documented in Appendices 4, G-3.

22. Trump's August 5, 2025 claim that "we are entitled to five more seats" in Texas creates constitutional impossibility under Article I, Section 2 where no constitutional provision grants presidents entitlement to congressional seats based on electoral performance. This systematic executive usurpation of legislative representation combined with legislative authorship control and oversight prevention proves comprehensive constitutional architecture replacement through criminal enterprise coordination documented in Exhibit A-11.

23. Johnson's four-month refusal to appoint Office of Congressional Conduct board—longest delay in 17-year history—completely shut down all congressional ethics investigations during the exact period requiring maximum accountability for Epstein oversight, rendering 4,000+ corruption complaints unprocessable. This systematic elimination occurred during identical timing with executive branch elimination of 17 inspector generals, proving systematic criminal enterprise coordination across branches designed to eliminate all governmental accountability mechanisms simultaneously. The perfect coordination timing eliminates coincidence explanations and proves organized criminal methodology using governmental authority for comprehensive oversight destruction: Johnson sabotages congressional ethics oversight while Trump eliminates executive branch oversight, creating total accountability blackout serving systematic

criminal protection rather than administrative delay documented in Exhibits B-1, B-2, B-3.

24. DOJ July 7, 2025 memo documented completion of exhaustive review processing over 300 gigabytes, 10,000+ videos/images, and 40+ computers, proving all victim protection work Johnson claimed to require was already completed before his constitutional duty abandonment. Johnson's coordination with Trump administration concealed completed government work to create false justification, proving systematic fraud where every technical barrier Johnson claimed was demonstrably eliminated, making his constitutional violations conscious criminal conspiracy rather than legitimate protective concerns documented in Exhibit B-5, B-6.

25. Attorney General Bondi's immediate retaliation against Chief Judge Boasberg (Exh. C-1) for constitutional crisis warnings identical to violations documented herein proves systematic suppression of constitutional accountability. Executive intimidation of judicial warnings validates constitutional emergency rather than refuting it, demonstrating coordinated attack on constitutional enforcement across all branches.

26. Johnson's claim of having a resolution "ready to go" with "correct language" constitutes systematic fraud because coordinated planning ensured Trump would release filtered files through executive authority before congressional action became necessary. Johnson never intended to produce his claimed resolution because the criminal enterprise coordination plan eliminated need for congressional oversight through preemptive executive usurpation of Article I authority. **If Johnson genuinely possessed a resolution with "correct language" addressing his claimed technical concerns, immediate production would validate his constitutional authority and resolve all stated**

**barriers to oversight. Johnson's refusal to produce his claimed resolution despite documented constitutional crisis proves the "ready to go" claim was systematic fraud designed to create delay enabling executive coordination rather than legitimate legislative preparation.** This premeditated coordination proves sophisticated criminal enterprise planning rather than reactive constitutional violations, demonstrating systematic conspiracy to prevent congressional oversight through coordinated executive usurpation while maintaining facade of legislative preparation.

27. Johnson's conduct violates individual statutory rights under FOIA (5 U.S.C. § 552) and Congressional Sunshine Act (5 U.S.C. § 552b) with clear judicial remedies and attorney's fees provisions documented through exhaustive exemption analysis in Appendix IV. These concrete statutory injuries create individual standing independent of constitutional theory, requiring federal transparency law enforcement where Johnson's cross-branch coordination creates unauthorized exemptions not provided by federal statutory framework documented in Exhibits I-1, C-2.

27A. Johnson's false technical claims create systematic democratic suppression extending beyond immediate constitutional violations through authoritative misinformation that permanently deters legitimate democratic participation. Johnson's position as Speaker of the House and claimed expertise as "constitutional law attorney" gives extraordinary weight to his systematic false legal claims, creating chilling effects that suppress congressional oversight, citizen advocacy, legal remedies, and media investigation through systematic professional misinformation designed to convince all participants that constitutional accountability mechanisms are "prohibited by law" when they are fully legal and constitutionally required. This

systematic weaponization of professional credibility to spread authoritative misinformation represents coordinated criminal methodology designed to permanently disable democratic accountability mechanisms by convincing citizens, representatives, attorneys, and media that constitutional remedies are legally impossible when they are fully available, proving criminal intent to protect criminal enterprises through systematic democratic suppression rather than isolated constitutional violations.

28. This systematic criminal enterprise using governmental authority creates documented constitutional emergency where constitutional structure is actively collapsing through criminal coordination rather than being protected through constitutional governance. Real-time validation occurred July 2, 2025, when systematic FBI institutional obstruction prevented Plaintiff from reporting federal crimes through official channels, proving complete elimination of all citizen recourse: congressional oversight (Johnson abandonment), federal prosecutors (systematic capture), inspectors general (17 fired), anti-corruption units (decimated), and citizen crime reporting (systematically obstructed). Normal democratic remedies are systematically disabled through coordinated criminal enterprise operation, requiring emergency judicial intervention before criminal enterprise consolidation becomes irreversibly normalized through continued governmental authority abuse serving systematic constitutional architecture replacement documented through contemporaneous evidence and defendants' recorded admissions.

## II. JURISDICTION AND VENUE

29. This Court has subject matter jurisdiction pursuant to: a. **28 U.S.C. § 1331** (federal question jurisdiction) for constitutional violations under Article I, Article III, First

Amendment, Fifth Amendment, and Fourteenth Amendment b. **28 U.S.C. § 1343(a)(3) and (4)** (civil rights jurisdiction) for violations of constitutional rights under color of federal law pursuant to **42 U.S.C. §§ 1983 and 1985** c. **5 U.S.C. § 552(a)(4)(B)** (FOIA jurisdiction) for Freedom of Information Act violations and statutory transparency rights d. **5 U.S.C. § 552b** (Congressional Sunshine Act jurisdiction) for congressional transparency and open meeting violations e. **28 U.S.C. § 1367** (supplemental jurisdiction) over related constitutional and statutory claims arising from common nucleus of operative facts

30. **Federal Question Jurisdiction - Constitutional Violations**: This action arises under the Constitution of the United States, specifically challenging systematic violations of: a. **Article I, Sections 1 and 5** (legislative power and congressional proceedings) b. **Separation of Powers** (cross-branch coordination violating constitutional structure) c. **First Amendment** (right to receive government information and petition for constitutional amendment) d. **Fifth and Fourteenth Amendment Due Process** (arbitrary government action and constitutional duty abandonment) e. **Fourteenth Amendment Equal Protection** (systematic discrimination creating two-tiered justice system)

31. **Civil Rights Jurisdiction - Systematic Constitutional Violations**: This Court has jurisdiction under **28 U.S.C. § 1343** for civil rights violations including: a. **42 U.S.C. § 1983** claims for constitutional violations under color of federal law b. **42 U.S.C. § 1985** claims for conspiracy to violate civil rights through cross-branch coordination c. Systematic governmental violations of constitutional rights requiring federal judicial intervention d. Criminal enterprise coordination violating constitutional governance and citizen rights

32. **Federal Transparency Law Jurisdiction**: This Court has specific statutory jurisdiction under: a. **5 U.S.C. § 552(a)(4)(B)** for FOIA violations with individual statutory rights and attorney's fees provisions b. **5 U.S.C. § 552b** for Congressional Sunshine Act violations requiring open government proceedings c. Systematic transparency law circumvention through cross-branch coordination creating unauthorized exemptions d. Individual statutory injury with clear judicial remedies and concrete redressability

33. **Emergency Constitutional Circumstances Jurisdiction**: This Court has jurisdiction over emergency constitutional circumstances including: a. Systematic constitutional breakdown requiring immediate judicial intervention b. Criminal enterprise coordination across government branches threatening constitutional governance c. Complete oversight mechanism destruction creating constitutional crisis d. Fundamental constitutional provisions rendered non-justiciable without judicial enforcement

34. **Personal Jurisdiction**: This Court has personal jurisdiction over Defendants because

a. Defendant Johnson resides and works in the District of Columbia as Speaker of the House

b. Constitutional violations occurred within this District through congressional actions

c. Cross-branch coordination occurred within this District between legislative and executive branches

d. Systematic government actions affecting Plaintiff's constitutional rights originated in this District

35. **Venue**: Venue is proper in this District pursuant to **28 U.S.C. § 1391(b)** because: a. Defendants reside in this District where constitutional violations occurred b. Substantial part of events giving rise to constitutional claims occurred in this District c. Congressional proceedings and cross-branch coordination occurred in this District d. Government defendants conduct official business affecting constitutional rights in this District

36. **Statute of Limitations**: This action is timely filed because: a. Civil rights claims under **42 U.S.C. §§ 1983 and 1985** are timely under applicable state statute of limitations b. FOIA claims under **5 U.S.C. § 552** are timely filed within six years of final agency action c. Congressional Sunshine Act claims are timely under applicable federal limitations period d. Ongoing constitutional violations create continuing violations doctrine extending limitations period e. Criminal enterprise coordination creates continuing conspiracy extending limitations period

37. **Article III Constitutional Mandate**: This Court has constitutional obligation under **Article III, Section 2** to exercise jurisdiction over constitutional cases because: a. Judicial power extends to all cases arising under this Constitution requiring constitutional enforcement b. Standing doctrine cannot render constitutional provisions non-justiciable without violating Article III mandate c. Constitutional impossibility of alternative plaintiffs for **Article I, Section 1** challenges requires citizen standing d. Systematic constitutional breakdown requires judicial intervention to prevent constitutional nullification through procedural limitations

38. **Supplemental Jurisdiction**: This Court has supplemental jurisdiction under **28 U.S.C. § 1367** over related claims including: a. State law claims arising from same

nucleus of operative facts as federal constitutional violations b. Compilation authority

and governmental process concealment claims related to federal constitutional duties c.

Democratic participation rights under state and federal law requiring comprehensive

relief d. Systematic government coordination affecting multiple legal theories requiring

unified judicial resolution

### III. PARTIES

#### A. Plaintiff

39. Plaintiff **JOSEPH KIRCHNER** is a citizen of the United States, resident of

Minnesota, taxpayer, and individual entitled to constitutional governance operating

within Article I requirements, federal transparency law compliance, separation of powers

protection, and constitutional duties superseding cross-branch political coordination.

40. **Federal Transparency Rights**: Plaintiff has concrete statutory rights under: a. **FOIA

(5 U.S.C. § 552)** to access government records including Epstein files and congressional

oversight materials; b. **Congressional Sunshine Act (5 U.S.C. § 552b)** to open

committee proceedings and transparent governmental processes; c. Individual statutory

injury from systematic transparency law circumvention through cross-branch

coordination; d. Attorney's fees provisions under federal transparency statutes for

violations.

41. **Democratic Representation Rights**: Plaintiff possesses fundamental constitutional

rights to: a. Effective representation through elected representatives exercising **Article I**

legislative powers; b. Functional democratic process including recorded votes on

constitutional oversight matters; c. Popular sovereignty through meaningful electoral participation and representative accountability; d. Protection from governmental destruction of representative process through procedural manipulation.

42. **Equal Protection Under Constitutional Law**: Plaintiff is subject to comprehensive federal statutory framework requiring disclosure of criminal associations with no government protection, while powerful figures receive coordinated governmental protection through Johnson's cross-branch coordination, creating systematic discrimination where: a. Ordinary citizens face **RICO prosecution** with **20-year sentences** for minimal association evidence; b. Epstein associates receive coordinated governmental immunity despite evidence exceeding federal prosecution standards; c. Two-tiered justice system violates fundamental equal protection principles; d. Systematic privilege exists nowhere in American legal system for any other individuals.

43. **Constitutional Governance Interests**: Plaintiff requires constitutional governance operating within: a. **Article I constitutional compliance** with independent congressional oversight duties; b. Separation of powers protection preventing cross-branch coordination for shared political objectives; c. Constitutional duty performance superseding criminal associate protection; d. Democratic accountability through transparent governmental processes and oversight mechanisms.

### B. Defendants

#### 1. Mike Johnson - Individual and Official Capacity

44. Defendant **MIKE JOHNSON** is sued in his individual and official capacity as Speaker of the United States House of Representatives. At all times relevant herein, Defendant Johnson acted under color of federal law, within the scope of his employment,

and with actual and apparent authority as Speaker with **Article I constitutional duties** to conduct independent oversight rather than coordinate with executive branch for shared political objectives.

45. **Johnson's Non-Discretionary Article I Constitutional Obligations**: As Speaker, Johnson has mandatory constitutional duties including: a. **Article I, Section 1** compliance requiring "ALL legislative Powers" be vested in Congress independently; b. **Article I, Section 5** authority for House proceedings serving constitutional governance rather than executive coordination; c. Constitutional oversight duties protecting national security through independent congressional investigation; d. Congressional independence from executive preferences in all Article I functions; e. Separation of powers maintenance preventing legislative subordination to executive coordination.

46. **Johnson's Authority Limitations Under House Rules**: The Speaker's powers derive entirely from House Rules adopted by majority vote, not constitutional grant. Critical limitations include: a. **Rule XV, Clause 1** requires the Speaker "shall put the question" when properly moved—mandatory, not discretionary; b. **Rule XI** grants committees autonomous authority over their proceedings, which Speaker cannot unilaterally override; c. **Rule XIX** requires Speaker to maintain order and decorum, not prevent democratic processes; d. **No House Rule** authorizes preventing committee votes when majority seeks to proceed; e. **No statutory authority** in Title 2 U.S.C. permits Speaker to block oversight based on executive coordination.

47. **Johnson Exceeded All Lawful Authority**: Johnson's prevention of Rules Committee voting violates: a. **House Rule XI, Clause 2**: Committee autonomy over proceedings; b. **House Rule XV**: Mandatory obligation to put questions properly before committees; c. **2**

**U.S.C. § 190b**: Congressional oversight authority that Speaker cannot unilaterally suspend; d. **Jefferson's Manual Section 464**: "The Speaker's power of recognition cannot be exercised arbitrarily"; e. **House Practice Ch. 46, § 3**: Speaker cannot prevent committees from exercising their rules.

48. **Johnson's Federal Transparency Law Obligations**: Johnson has statutory duties including: a. **FOIA compliance** ensuring government transparency without unauthorized exemptions; b. **Congressional Sunshine Act** obligations for open committee proceedings; c. Democratic accountability through transparent legislative processes; d. Statutory disclosure duties that cannot be abandoned for cross-branch political coordination.

49. **Johnson's Constitutional Oath Requirements**: Johnson took oath pursuant to **5 U.S.C. § 3331** to "support and defend the Constitution of the United States" creating binding obligations to: a. Prioritize constitutional duties over cross-branch political coordination; b. Maintain separation of powers rather than coordinate with executive branch; c. Protect constitutional governance rather than enable criminal associate protection; d. Ensure constitutional compliance in all official actions affecting constitutional structure.

50. **Johnson's Systematic Constitutional Violations**: Johnson's conduct violates constitutional duties through: a. Unilateral termination of democratic processes despite Republican supermajority control; b. Cross-branch coordination abandoning Article I independence for executive preferences; c. Systematic oversight destruction through complete ethics mechanism elimination; d. Criminal associate protection prioritized over

constitutional child welfare duties; e. Dual linguistic fraud manipulating legal terminology to enable criminal protection.

### 2. United States House of Representatives - Institutional Defendant

51. The **UNITED STATES HOUSE OF REPRESENTATIVES** is an entity capable of being sued and is responsible for: a. **Article I constitutional compliance** ensuring congressional independence and oversight duties; b. Federal transparency law enforcement through proper committee procedures and disclosure; c. Constitutional governance policies preventing cross-branch coordination for criminal protection; d. Institutional integrity through systematic oversight mechanisms and accountability procedures; e. Democratic process protection preventing procedural manipulation serving political rather than constitutional objectives.

52. **Institutional Constitutional Violations**: The House of Representatives has institutional responsibility for: a. Systematic oversight mechanism destruction through Johnson's unprecedented ethics board delays; b. Democratic process corruption through procedural fraud preventing constitutional accountability; c. Cross-branch coordination enablement violating separation of powers through institutional coordination; d. Constitutional duty abandonment serving criminal associate protection over constitutional governance.

### 3. Pam Bondi - Individual and Official Capacity

53. Defendant **PAM BONDI** is sued in her individual and official capacity as Attorney General of the United States. At all times relevant herein, Defendant Bondi acted under color of federal law, within the scope of her employment, and with actual and apparent authority as Attorney General with constitutional duties to provide independent legal

27

counsel rather than coordinate criminal associate protection through systematic legal standard abandonment.

54. **Bondi's Constitutional and Professional Obligations**: As Attorney General, Bondi has mandatory duties including: a. **Article II, Section 3** duty to "take Care that the Laws be faithfully executed" independently of political preferences; b. Constitutional obligation to provide accurate legal analysis consistent with established law; c. **Model Rule 1.1** professional competence requiring consistent application of legal standards; d. **Model Rule 8.4(c)** prohibition against dishonesty, fraud, deceit, or misrepresentation; e. Due process obligations to apply legal standards consistently regardless of political coordination.

55. **Bondi's Documented Professional Capture**: Bondi's November 22, 2024 pre-appointment statement correctly stated that criminal associates "have no legal basis" for name protection unless they are "a child, a victim, or a cooperating defendant." Post-appointment, Bondi's February 27, 2025 statements show continued systematic reversal where she claims to protect "254 young girls, women who are victims" while systematically expanding protection to criminal associates she previously stated "have no legal basis" for protection, proving: a. Complete understanding of correct legal standards before Trump appointment; b. Conscious abandonment of known legal standards after coordination; c. Professional fraud using legal authority to enable criminal protection; d. Systematic violation of legal principles she demonstrably understood; e. Criminal mens rea through deliberate reversal of her own correct analysis documented in Exhibits A-12 and A-17.

56. **Bondi's Retaliatory Conduct**: Bondi filed ethics complaints against Chief Judge Boasberg for warning of constitutional crisis while herself violating Canon 3(A)(6) through public commentary on ongoing federal cases (Exh.C-1), demonstrating: a. Use of prosecutorial authority for political retaliation; b. Systematic suppression of judicial constitutional warnings; c. Selective enforcement serving political rather than ethical purposes; d. Coordination with executive branch to silence constitutional accountability; e. Violation of **18 U.S.C. § 1512(b)** through intimidation of judicial officers.

57. **Bondi's Conspiracy Participation**: Bondi's coordination with Johnson creates cross-branch criminal enterprise through: a. Identical professional capture methodology abandoning known standards; b. Coordinated timing serving criminal associate protection; c. Systematic use of "credible evidence" filtering to usurp congressional authority; d. Joint abandonment of constitutional duties after Trump coordination; e. Statistical impossibility of coincidental professional standard abandonment.

### 4. Unknown Co-Conspirators (DOES 1-20)

58. **DOES 1-20** are unknown co-conspirators including but not limited to: a. Executive branch officials coordinating with Johnson for constitutional duty abandonment; b. Cabinet-level officials using coordinated linguistic manipulation frameworks; c. House leadership and staff members participating in systematic oversight destruction; d. Republican committee members coordinating to prevent democratic voting processes; e. Trump administration officials providing coordinated protective rationales and evidence filtering; f. DOJ officials involved in Maxwell immunity coordination and evidence concealment; g. Other government officials participating in systematic criminal enterprise coordination.

59. **Coordinated Criminal Enterprise Participation**: Unknown co-conspirators participated in: a. Systematic constitutional duty abandonment through cross-branch coordination; b. Criminal associate protection using governmental authority for criminal network benefit; c. Democratic process destruction through procedural manipulation and voting prevention; d. Federal transparency law violations through coordinated circumvention of disclosure duties; e. Dual linguistic fraud coordination using identical false legal terminology across branches.

60. **Ongoing Criminal Conspiracy**: Co-conspirators continue participating in: a. Constitutional governance prevention through systematic coordination and obstruction; b. Criminal enterprise protection enabling ongoing sexual predator network operation; c. Oversight mechanism destruction preventing constitutional accountability and democratic transparency; d. Systematic privilege creation for politically connected criminal associates violating equal protection.


## IV. FACTUAL ALLEGATIONS

### A. Constitutional Framework and Plaintiff's Standing

61. The Texas Democrats precedent creates constitutional proof of standing through enforcement inequality. If Texas Democrats possess sufficient constitutional standing to face immediate civil arrest for following established constitutional precedent while maintaining Article I independence, then Plaintiff possesses superior standing to seek enforcement against Johnson's unprecedented constitutional violations through executive coordination that abandons Article I duties. Constitutional hierarchy requires greater enforcement for greater constitutional violations, yet Texas Democrats' constitutional

procedure usage within established precedent receives escalating enforcement from civil arrest to indefinite detention between sessions while Johnson's constitutional procedure violations without historical precedent receive governmental protection. Real-time escalation occurred August 18, 2025, when Rep. Nicole Collier remained "locked inside the Texas Capitol" after refusing to sign a "permission slip" creating indefinite confinement between legislative sessions that exceeds Texas Supreme Court 2021 authority to "physically compel attendance" which traditionally ended when quorum was restored. This enforcement escalation from constitutional compliance receiving traditional civil arrest to indefinite detention through "permission slip" systems while unprecedented constitutional violations receive complete immunity proves systematic constitutional breakdown requiring citizens' superior standing to restore constitutional hierarchy where constitutional violations should receive greater enforcement than constitutional compliance.

62. Traditional standing doctrine assumes good faith governmental enforcement of constitutional violations. The Texas Democrats precedent proves systematic enforcement inversion where constitutional compliance is punished while constitutional violations are protected. This enforcement corruption eliminates traditional standing limitations because standing doctrine cannot function when governmental enforcement systematically protects rather than prosecutes constitutional violations, requiring citizen enforcement to restore constitutional compliance.

63. Exhibit A-12 establishes Plaintiff's concrete standing independent of constitutional theory through Attorney General Bondi's systematic abandonment of legal standards she previously articulated correctly on November 22, 2024. This creates individual standing

through: (1) fraudulent government legal services where citizens pay for competent legal analysis but receive professionally compromised determinations serving criminal protection; (2) due process violations through inconsistent legal standard application where identical legal frameworks are selectively abandoned; (3) equal protection violations through discriminatory application of correct legal standards based on political rather than legal considerations; and (4) professional misconduct harm where citizens suffer concrete injury from government attorneys systematically violating ethical standards they demonstrably understand, creating measurable harm to legal system integrity and individual reliance interests. Johnson's logical impossibility coordination creates concrete constitutional injury where Plaintiff suffers systematic denial of constitutional governance through **constitutionally impossible legitimate representation**. When elected representatives abandon vested congressional authority through coordination with officials who deny the factual basis for that authority, citizens suffer **logical impossibility of legitimate representation** requiring judicial intervention. The perfect logical contradiction where Johnson simultaneously acknowledges oversight necessity while preventing oversight through false coordination creates constitutional injury that cannot be remedied through normal democratic processes when the representatives themselves systematically violate constitutional logic.

64. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), established that Article III, Section 2 requires "the judicial Power shall extend to all Cases...arising under this Constitution," creating constitutional mandate for judicial enforcement rather than constitutional nullification. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), confirms that standing requirements must serve Article III purposes of

constitutional enforcement, not prevent constitutional remedies through procedural barriers that render constitutional provisions non-justiciable. Comprehensive legal precedent analysis documented in Appendix III demonstrates that Supreme Court precedent establishes exceptional circumstances where traditional standing requirements must yield to constitutional imperatives, particularly when systematic governmental violations threaten fundamental constitutional structure requiring immediate judicial intervention.

65. Constitutional analysis requires distinction between legitimate legislative proceedings within judicial deference and constitutional violations requiring judicial intervention:

**Tier 1 - Normal Legislative Operations**: Courts defer completely to congressional proceedings that operate within constitutional and House Rule boundaries, including policy disagreements, partisan voting, and legitimate procedural disputes where constitutional democratic processes function properly.

**Tier 2 - Constitutional Violations Through Legislative Process**: Courts possess jurisdiction to review whether congressional actions violate constitutional requirements even regarding internal operations, as established in *Powell v. McCormack*, 395 U.S. 486 (1969), and *INS v. Chadha*, 462 U.S. 919 (1983), when legislative procedures contravene constitutional mandates while maintaining democratic process functionality.

**Tier 3 - Systematic Democratic Process Destruction**: Courts must provide emergency constitutional relief when systematic destruction of democratic processes threatens constitutional structure itself, requiring extraordinary judicial intervention to

restore constitutional compliance when normal democratic remedies are systematically disabled through governmental action.

66. Johnson's prevention of any committee voting despite 9-4 Republican supermajority control transcends normal legislative disagreement and constitutes systematic destruction of democratic process requiring emergency judicial intervention because:

a. Johnson violated constitutional duties and House Rules requiring democratic resolution through majority vote, with no legitimate discretionary authority to prevent voting when Republicans control the outcome through supermajority.

b. Johnson systematically destroyed the democratic voting process itself rather than losing within that process, preventing citizens' elected representatives from performing the legislative duties for which they were elected.

c. Johnson's prevention of voting despite Republican supermajority control creates constitutional impossibility that any legitimate governmental purpose could justify preventing democratic resolution when Republicans are guaranteed to achieve desired result.

d. Johnson's vote erasure despite supermajority control (¶1) renders meaningless citizens' electoral choices by preventing elected representatives from exercising legislative authority citizens granted them through democratic participation.

67. The unprecedented nature of Johnson's systematic democratic process destruction supports rather than defeats judicial authority because:

a. Few governmental officials would prevent democratic voting while controlling the outcome, establishing that judicial intervention applies only to extraordinary constitutional violations rather than routine legislative disagreement.

b. When democratic processes themselves are systematically destroyed, normal judicial deference enables rather than prevents constitutional violations, requiring emergency judicial intervention to restore constitutional structure.

c. Citizens cannot remedy systematic destruction of representative process through electoral participation when elected representatives are prevented from performing legislative duties, creating constitutional necessity for judicial enforcement of democratic process functionality.

d. Article III, Section 2 requires judicial power extend to constitutional cases, creating constitutional obligation for courts to restore constitutional compliance when systematic governmental violations destroy democratic accountability mechanisms.

68. Supreme Court precedent establishes judicial authority to restore constitutional processes during systematic governmental breakdown:

a. Courts possess jurisdiction to determine whether congressional actions violate constitutional requirements even regarding internal legislative operations, establishing that constitutional violations disguised as legislative proceedings fall within judicial authority.

b. Courts must invalidate legislative procedures that violate constitutional structure, demonstrating judicial obligation to protect constitutional framework against systematic process violations regardless of internal legislative characterization.

c. Courts must prevent systematic circumvention of constitutional structure even during claimed emergencies, establishing precedent for extraordinary judicial relief when governmental coordination threatens constitutional governance.

d. Constitutional requirements cannot be suspended through governmental coordination or claimed emergency circumstances, requiring judicial enforcement of constitutional structure against systematic governmental violations.

69. Plaintiff's requested relief addresses constitutional violations rather than legislative policy choices:

a. Primary relief prohibits Johnson's coordination with executive branch to abandon Article I duties rather than dictating specific legislative outcomes or procedures.

b. Relief requires restoration of voting procedures citizens expect from elected representatives rather than controlling results of such votes, protecting constitutional structure while preserving legislative independence within constitutional bounds.

c. Systematic constitutional breakdown justifies extraordinary relief limited to restoration of constitutional compliance rather than ongoing judicial management of legitimate legislative discretion.

d. Standard applies exclusively to constitutional impossibility cases where governmental officials prevent democratic process while Republicans control outcomes, creating narrow exception for systematic constitutional violations rather than broad judicial authority over legislative operations.

70. Courts cannot dismiss Article I, Section 1 as merely "structural guidance" or "construction tool" rather than enforceable constitutional law. Appendix II's

comprehensive analysis of Ninth Amendment judicial nullification demonstrates identical pattern where courts inappropriately treat clear constitutional commands as non-enforceable "advisory provisions." Article I, Section 1 states "ALL legislative Powers herein granted SHALL BE vested in a Congress"—language containing clear constitutional commands discoverable through objective linguistic analysis rather than subjective judicial philosophy about enforceability.

71. Appendix II's analysis demonstrates constitutional amendments require approval by two-thirds of both houses of Congress and three-fourths of state legislatures, representing supermajority democratic ratification, while judicial interpretation requires only five unelected justices with lifetime tenure. Constitutional hierarchy established by Article VI requires democratically ratified constitutional text control judicial interpretation rather than being controlled by it. Courts cannot subordinate foundational constitutional provisions to derivative standing limitations without violating Article III mandate to enforce rather than nullify constitutional law.

72. Appendix II's linguistic analysis methodology applied to Article I, Section 1 reveals substantive constitutional commands: "ALL" establishes complete exclusivity, "legislative Powers" encompasses complete lawmaking process, "SHALL BE vested" creates mandatory constitutional duty, "in a Congress" specifies exclusive constitutional entity. These linguistic elements create enforceable constitutional requirements discoverable through objective analytical methods independent of judicial philosophy, preventing courts from rendering constitutional text non-justiciable through interpretive doctrine.

73. Article I, Section 7's requirement that bills "which shall have passed" Congress "be presented to the President" establishes objective constitutional impossibility when the President authors legislation because the constitutional text assumes congressional authorship requiring presidential review of unfamiliar work. The logical impossibility of presenting legislation to its author, combined with the constitutional fraud of 10-day consideration periods for reviewing one's own work, creates constitutional violations discoverable through objective textual analysis rather than subjective judicial interpretation, establishing clear legal standards for constitutional compliance that transcend political questions and create justiciable constitutional injuries requiring judicial remedy. Johnson's coordination with Trump's H.R. 1 authorship enables systematic constitutional process fraud where constitutional requirements become meaningless theater rather than enforceable constitutional duties.

### B. Article I Constitutional Framework and Johnson's Duties

74. Article I, Section 5 Constitutional Requirements: "Each House may determine the Rules of its Proceedings" and shall conduct the business of legislative governance, including constitutionally required oversight of executive branch actions and government official conduct affecting national security and constitutional governance through independent congressional authority.

75. Separation of Powers Requirements: Congress must exercise independent oversight authority as co-equal branch that cannot be subordinated to executive preferences or delegated to executive action, requiring congressional independence in Article I duties rather than coordination for shared political objectives.

76. Article I grants Congress mandatory oversight authority over government official conduct, criminal activity affecting government operations, and national security vulnerabilities created by government official criminal associations, establishing constitutional duties that cannot be abandoned for executive coordination or shared political preferences.

77. As Speaker, Johnson has constitutional obligations to: (a) ensure House proceedings serve constitutional governance rather than executive coordination; (b) conduct independent oversight of government official conduct affecting national security; (c) maintain congressional independence from executive preferences; and (d) prioritize constitutional duties over cross-branch political coordination.

### C. Jeffrey Epstein Criminal Enterprise and Constitutional Oversight Necessity

78. Jeffrey Epstein operated a federal sex trafficking enterprise with extensive connections to government officials and business leaders who continue to exercise decision-making authority affecting government operations and policy decisions that directly impact Plaintiff's constitutional governance interests and rights to government operating within constitutional requirements.

79. Article I, Section 1 establishes that "ALL legislative Powers herein granted shall be vested in a Congress," creating the constitutional foundation for independent congressional authority including oversight obligations, investigative powers, and government accountability requirements that cannot be subordinated to executive coordination or abandoned for shared political motivations.

80. Congressional oversight of government official conduct serves mandatory Article I functions including: (a) constitutional governance through independent accountability mechanisms; (b) institutional integrity through systematic oversight of government conduct; (c) democratic transparency through constitutionally required information access; and (d) separation of powers through independent oversight of executive branch operations.

81. Individuals with concealed Epstein associations continue to exercise governmental and cultural authority affecting Plaintiff through: (a) policy decisions on government operations and regulatory matters; (b) administrative decisions affecting legal obligations and government services; (c) oversight decisions affecting government accountability rights; (d) constitutional governance decisions affecting democratic participation; and (e) cultural influence through entertainment, news, and social media platforms that shape public understanding and democratic discourse. These concealed criminal associations in both government and media create systematic manipulation of Plaintiff's information environment, preventing informed democratic participation while criminal associates maintain positions of authority.

82. FBI's declaration of "no basis for release" regarding congressional oversight materials represents constitutional fraud using authority appearing nowhere in FOIA's nine specific exemptions under 5 U.S.C. § 552(b) as systematically demonstrated in Appendix IV. This executive branch claim of authority superior to Article I congressional oversight proves systematic constitutional usurpation where agencies invent legal authorities to prevent congressional accountability. The FBI's simultaneous redaction of Trump's name under privacy exemptions while preventing congressional access demonstrates coordinated

evidence manipulation serving systematic criminal associate protection through invented legal authorities that exist nowhere in constitutional text or statutory law.

83. The convergence of Trump's recorded admission, Maxwell's preferential treatment, FBI's constitutional usurpation, and Blanche's prosecutorial capture during constitutional complaint preparation provides perfect real-time validation of systematic criminal enterprise coordination. These contemporary developments prove ongoing criminal coordination across legislative and executive branches using governmental authority to protect criminal associates rather than serve constitutional compliance, requiring immediate judicial intervention to prevent continued criminal enterprise operation through systematic capture of constitutional governance mechanisms.

84. Trump's detailed confirmation that Virginia Giuffre worked at Mar-a-Lago spa and was "stolen" by Epstein as documented in Exhibit A-6 provides definitive authentication of victim testimony while destroying FBI claims of "no credible evidence." Trump states: "I think she worked at the spa...Yeah, he stole her. And by the way, she had no complaints about us." **This creates perfect legal trap: Trump authenticates victim testimony the FBI claims lacks credibility, proving either FBI systematic deception or Trump's confession to crimes the FBI is covering up.** This perpetrator authentication of victim accounts proves consciousness of concealed criminal activity, demonstrates systematic deception coordinated with Johnson's constitutional duty abandonment, and provides federal criminal evidence exceeding standards for conspiracy prosecution under 18 U.S.C. §§ 241, 371.

85. Trump's detailed knowledge of teenage spa worker movements among hundreds of staff at massive resort operations creates logical impossibility for innocent business

explanation as documented in Exhibit A-8. Billionaire resort owners do not personally track individual teenage spa employees—such decisions are handled by managers. Trump's specific memory of worker recruitment years later proves unusual significance requiring personal attention that only serious criminal activity involving teenage workers would necessitate. Standard business practices never reach billionaire attention for teenage spa workers who represent minimal business value. The disproportionate response—permanent social banishment of wealthy associate—proves territorial protection of criminal enterprise operations rather than legitimate business competition, validating victim testimony about criminal recruitment operations requiring Trump's direct intervention.

86. Trump's documented systematic hiring of young women (17-18) based solely on appearance as evidenced in Exhibit A-9 perfectly validates victim testimony describing recruitment operations at Trump properties. Trump's 2006 recorded statements provide direct evidence: "A beautiful girl who was 17 or 18...my people came, she said, Mr. Trump, she has no experience. So I interviewed her anyway 'cause she was so pretty and I said, let me ask you, do you have any experience? She goes, no, sir. I said, when can you start?" When asked about flight attendant positions, Trump immediately stated "I think she's hired" before any qualification assessment. His immediate comparison to addiction—"See now she worked in my place, that's like a death wish for me. Right? That's like an alcoholic...this would be my form of alcoholism"—proves Trump understood his systematic targeting of young women was inappropriate and potentially criminal yet continued such recruitment compulsively, providing direct evidence of

consciousness of guilt required for federal conspiracy charges under 18 U.S.C. §§ 241, 371.

87. Trump's "stolen workers" explanation becomes impossible when Exhibit A-9 proves Trump used identical recruitment methods—systematically hiring minors (17-18) based solely on appearance. Business reality analysis documented in Exhibit A-8 shows this fails basic business logic: resort staff competition occurs continuously without owner intervention, and business relationships routinely survive employee movement. Trump cannot claim Epstein "stole" workers while employing the same predatory recruitment targeting. This proves the "worker theft" narrative conceals territorial disputes over shared criminal recruitment operations rather than legitimate business concerns, demonstrating consciousness that real explanations require false narratives to avoid accountability.

88. Trump's victim testimony authentication (¶84) provides perfect criminal enterprise evidence because: (1) validates victim credibility through perpetrator admission; (2) proves consciousness of concealed criminal activity through alternative explanations; (3) demonstrates systematic deception methodology coordinated with Johnson's constitutional duty abandonment; and (4) provides federal criminal evidence standards for conspiracy, obstruction, and civil rights violations requiring immediate prosecution independent of captured federal apparatus.

89. Trump's admission demonstrates identical linguistic manipulation patterns used in contemporary Epstein file suppression: (1) immediate minimization ("that's such old history"); (2) claimed simplicity while avoiding detailed explanation ("very easy to explain, but I don't wanna waste your time"); (3) vague language concealing specifics

("he did something that was inappropriate"); and (4) defensive moral positioning ("I'm glad I did"). This systematic linguistic deception proves ongoing consciousness that real explanations for criminal associate relationships require false narratives to avoid accountability.

90. Trump's primary defense strategy—claiming a "falling out" with Epstein over "stolen workers" before Epstein's 2008 conviction—inadvertently provides definitive RICO criminal enterprise evidence under *United States v. Turkette* "association-in-fact" standards. The combination of Trump's systematic recruitment admissions (Exhibit A-9), territorial dispute confession ("stolen workers"), personal compulsion acknowledgment ("alcoholism"), victim testimony authentication (¶84), and business logic impossibility (Exhibit A-8) proves all required RICO elements: (1) Common Purpose through both parties systematically recruiting young women; (2) Relationship Among Associates through documented years of coordination before territorial dispute; (3) Sufficient Longevity through multi-year criminal enterprise operations; and (4) Criminal Activity through territorial disputes over recruitment operations proving competitive criminal enterprise rather than legitimate business relationships. Trump's defense strategy constitutes confession of RICO enterprise participation requiring constitutional oversight that Johnson's coordination systematically prevents.

91. Trump's recorded statement to interviewer Ryan Finnerty "we don't want people to get hurt. You can't have people associated..." as documented in Exhibit A-5 constitutes direct confession that Epstein file suppression serves criminal associate protection rather than victim protection. Combined with Trump's authentication of victim testimony (¶84), systematic recruitment operations (¶86), and impossible business explanations (¶84), this

proves federal RICO enterprise requiring constitutional oversight that Johnson

systematically prevents through coordinated abandonment of Article I duties.

92. This documented criminal enterprise—validated by Trump's own admissions—makes

Johnson's constitutional duty abandonment protection of proven criminal operations

rather than legitimate governance. Johnson's coordination with Trump despite this

evidence proves criminal conspiracy to protect sexual predator networks through

systematic prevention of constitutionally required oversight, creating concrete injury to

Plaintiff's rights to constitutional governance free from criminal enterprise control.


### Section D: Johnson's Constitutional Violations Through Executive Coordination

#### 1. Contemporary Criminal Enterprise Evidence Validating Constitutional Violations

93. Representatives Ro Khanna (D-CA) and Tom Massie (R-KY) sponsored a bipartisan

resolution calling for disclosure of Jeffrey Epstein files within 30 days, as documented in

Exhibit C-4, demonstrating cross-party recognition of Article I oversight obligations and

national security imperatives requiring constitutional compliance rather than executive

coordination.

94. Trump's criminal motivation confession documented in Exhibit A-5 () eliminates

traditional causation speculation because defendant confesses to denying government

transparency for criminal rather than legitimate purposes, establishing individual

statutory rights violation with clear judicial remedies and attorney's fees provisions.

95. Johnson's July 27, 2025 Meet the Press interview "I agree with President Trump, with

the Department of Justice, with the FBI, that you need all credible evidence and

information out there" as documented in Exhibit A-4 and A-14 constitutes direct confession of abandoning congressional independence for executive coordination, creating concrete constitutional injury where Plaintiff's elected representatives admit abandoning Article I duties owed to constituents. This systematic coordination violating Article I constitutional independence causes direct representational injury where citizens' constitutional right to independent congressional oversight is eliminated through confessed cross-branch coordination.

96. Johnson's July 30, 2025 CNN admission "We're using every mechanism within our power" provides additional evidence of systematic Article I violations through executive coordination language that replaces exclusive congressional authority with joint legislative-executive action. Johnson's use of "we" to describe oversight mechanisms proves ongoing constitutional violations where "ALL legislative Powers" vested exclusively in Congress under Article I, Section 1 are systematically exercised through executive coordination rather than congressional independence. Johnson's claim of "intellectual consistency" while demonstrating perfect contradiction with his 2023 position against "relying upon the interpretation of a small group of government officials" proves systematic professional fraud using constitutional authority for criminal enterprise protection documented in Exhibit A-13.

97. Trump's associate protection priority confession (¶9) destroys any legitimate victim protection defense through systematic coordination with Johnson's identical protective language, proving criminal conspiracy rather than legitimate governmental concern requiring immediate judicial intervention.

98. Trump's criminal enterprise validation (¶9) provides perfect documentation of systematic criminal enterprise coordination where executive and legislative branches coordinate using identical false legal justifications to protect criminal associates through coordinated constitutional duty abandonment serving criminal rather than public interests.

99. Trump's recorded admission meets federal criminal evidence standards under **18 U.S.C. § 371** (conspiracy to defraud United States), **18 U.S.C. § 1512** (obstruction of justice), and **42 U.S.C. § 1983** (civil rights violations) by providing direct evidence of criminal motivation, consciousness of guilt through immediate deflection, and coordinated criminal enterprise operation using governmental authority for criminal associate protection rather than constitutional compliance.

100. Trump's July 9, 2025 Cabinet meeting as documented in Exhibit A-7 demonstrates systematic deflection coordination where Trump attacks questioning about constitutional oversight as "desecration" while Attorney General Bondi coordinates identical deflection methodology (Ex. A-19, B-4, B-5), proving cabinet-level coordination to prevent constitutional accountability through coordinated attack on legitimate oversight inquiries serving criminal protection rather than constitutional governance.

### 2. Constitutional Impossibility of Democratic Process Prevention

101. Johnson's vote prevention despite supermajority control (¶1) creates concrete standing through procedural fraud because: (1) **arithmetically certain** that Republicans would win any vote; (2) defendant's admission of criminal associate protection motivation; (3) no legitimate governmental purpose exists for preventing democratic resolution when controlling outcome; and (4) Plaintiff suffers concrete constitutional injury from systematic destruction of democratic process through coordination serving

criminal rather than constitutional purposes. Johnson's 100% false technical claims create **constitutional impossibility of legitimate defense through objective legal analysis**: (1) Resolution cites standard federal CSAM statutes (18 U.S.C. §§ 2256, 2252-2252A) making Johnson's "wrong provision" claim professionally inexcusable; (2) Resolution provides explicit redaction authority for segregable portions making Johnson's "requires grand jury testimony release" claim objectively false under standard DOJ procedures; (3) Resolution contains comprehensive victim protections making Johnson's "inadequate protection" claim demonstrably contradicted by resolution text; (4) Johnson claiming "the house rules resolution sets a good standard and requires all credible evidence to be released" when H.Res. 5 (House Rules) contains zero references to credible evidence, Epstein, or disclosure requirements, while actual congressional oversight authority derives from federal statutes 2 U.S.C. §§ 192, 194, demonstrating systematic confusion between internal procedural rules and federal statutory authority that no competent attorney could accidentally make. A "constitutional law attorney" cannot achieve 0% accuracy on four separate technical legal claims within his professional expertise without systematic criminal intent requiring immediate judicial intervention.

101A. Johnson has created a perfect legal contradiction that proves systematic professional fraud through his claims about grand jury testimony release. Johnson claims the identical legal action (DOJ releasing grand jury materials through court procedures) is simultaneously "prohibited by law" when directed by Congressional resolution but "perfectly legal" when directed by Presidential order, creating logical impossibility because federal law doesn't change based on which branch initiates the court petition process under Federal Rule of Criminal Procedure 6(e).

101B. Johnson's Meet the Press statement: "It requires the DOJ to release grand jury testimony. They are prohibited by law from doing so, so it is not the right approach" (Ex. A-4) directly contradicts his FOX News statement: "Additionally, the president has directed the Department of Justice to pursue the release of grand jury information and that is happening as we speak. In fact, the court is processing a DOJ's request for grand jury materials" (Ex. A-3). These contradictory claims regarding identical legal procedures prove systematic professional fraud using false legal analysis to justify constitutional duty abandonment while admitting the identical action is legal when pursued by executive coordination.

101C. Federal Rule of Criminal Procedure 6(e) establishes clear exceptions permitting grand jury material disclosure including: judicial proceedings requiring disclosure; court orders for appropriate governmental purposes; congressional oversight with proper legal procedures; and DOJ petitions with judicial approval. The established legal process involves petition filing (by DOJ, Congress, or other authorized entity), court review of legal standards and public interest, judicial determination on disclosure scope, and protective measures for sensitive information. Historical precedent demonstrates courts have repeatedly authorized grand jury material disclosure for congressional investigations, judicial proceedings, public oversight purposes, and criminal justice administration.

101D. As a "constitutional law attorney," Johnson must understand Federal Rule of Criminal Procedure 6(e) disclosure procedures, congressional oversight authority over DOJ, court petition processes for unsealing materials, and the fact that he admits Trump is legally pursuing identical action. Johnson's own admission that Trump's DOJ

petition is legal proves that grand jury material release through court procedures is not prohibited by law, making Johnson's claim systematic deception designed to prevent congressional oversight while coordinating with executive branch pursuit of identical procedures he claims are illegal for Congress.

101E. Johnson cannot explain this contradiction without proving systematic fraud. If grand jury release is "prohibited by law," then Trump's direction violates federal law, Johnson should oppose Trump's illegal conduct, the DOJ petition process Johnson describes is unlawful, and this proves Johnson's legal claim is correct but coordination is criminal. If Trump's direction is legal, then congressional resolution using identical procedures would also be legal, Johnson's "prohibited by law" claim is demonstrably false, and this proves Johnson's technical legal claim is systematic deception. Either logical path proves Johnson's professional fraud through impossible legal positions serving criminal conspiracy coordination rather than constitutional compliance.

101F. Johnson uses false legal analysis to justify abandoning congressional oversight authority that he knows is constitutionally valid, proven by his admission that Trump can legally pursue identical action. This violates Model Rule 1.1 (Competence) through systematic false technical claims and Model Rule 8.4(c) (Dishonesty) through using professional authority for deceptive legal analysis. The criminal conspiracy elements include knowledge (Johnson knows grand jury release is legally possible because he admits Trump does it), intent (uses false legal claims to prevent congressional oversight), coordination (systematic pattern across multiple technical domains), and criminal purpose (protecting criminal associates through constitutional violations).

101G. Johnson's false House Rules claim proves systematic deception because the
Rules Committee rules address only procedural matters including meeting procedures,
voting requirements, hearing procedures, records maintenance, staff appointments, and
general parliamentary procedures, with zero references to evidence evaluation,
disclosure standards, oversight protocols, or "credible evidence" terminology
anywhere in the document. Johnson's claim that House Rules "require all credible
evidence to be released" constitutes professional fraud because no such language
exists in any House Rule, proving Johnson manufactures fake legal authority to justify
constitutional duty abandonment through systematic misrepresentation of actual rule
content that any Speaker would be required to know accurately.

102. Johnson's coordination with Trump despite Trump's explicit "hoax" declaration
documented in Exhibit A-16 creates additional constitutional impossibility where
preventing democratic resolution serves coordination with officials who deny the factual
predicate for governmental action. Johnson's 100% false technical claims regarding the
Massie-Khanna resolution create constitutional impossibility of legitimate defense
through logical analysis: (1) Resolution cites standard federal CSAM statutes (18 U.S.C.
§§ 2256, 2252-2252A) making Johnson's "wrong provision" claim professionally
inexcusable; (2) Resolution provides explicit redaction authority for segregable portions
making Johnson's "requires grand jury testimony release" claim objectively false under
standard DOJ procedures; (3) Resolution contains comprehensive victim protections
making Johnson's "inadequate protection" claim demonstrably contradicted by resolution
text; (4) Johnson claiming House Rules contain "credible evidence" requirements
appearing nowhere in H.Res. 5 while actual authority derives from 2 U.S.C. §§ 192, 194,

proving systematic constitutional authority laundering through false legal hierarchies. A "constitutional law attorney" cannot achieve 0% accuracy on four separate technical legal claims across different legal domains without systematic criminal intent requiring immediate judicial intervention. Johnson's fraud extends beyond false claims about the Massie-Khanna resolution (Ex. C-4) to systematic prevention of his own supposedly 'superior' alternative. Johnson's recorded claim that 'House Republicans on the rules committee have a resolution that is well drafted, that is thoughtfully drafted by lawyers that would make this workable' followed by preventing any vote on this supposedly superior resolution proves his technical objections serve criminal protection rather than legitimate legal concerns. If Johnson genuinely possessed a 'well drafted' resolution that solved victim protection issues while enabling oversight, preventing its vote creates constitutional impossibility of legitimate technical motivation. Johnson's prevention of both the supposedly 'flawed' resolution and his supposedly 'superior' resolution proves systematic prevention of any oversight regardless of technical adequacy, demonstrating criminal protection motivation through fraudulent technical criticism designed to justify systematic oversight elimination rather than oversight improvement.

102A. Representatives Khanna and Massie possess clear authority under House Rule XI, Clause 2(m)(1)(A) to propose congressional oversight resolutions, while Rules Committee Rule 3(c)(2) establishes that "A record vote of the Committee shall be provided on any question before the Committee upon the request of any member." Rules Committee Rule 3(b)(3) requires only "a majority of the members of the Committee shall constitute a quorum for the purposes of... taking any other action," and Rules Committee Rule 3(c)(1) mandates that voting "may be conducted on any

measure or motion pending before the Committee" when quorum requirements are met. Johnson's prevention of any committee consideration of the properly proposed Massie-Khanna oversight resolution violates these established Rules Committee procedures by denying committee members their explicit right to request record votes on pending matters, preventing the committee from taking action despite having sufficient quorum with 9-4 Republican supermajority, and exceeding Speaker authority over committee internal voting procedures that operate according to Rules Committee rules rather than Speaker coordination with executive branch preferences.

102B. Johnson's prevention of voting also violates Rules Committee Rule 3(c)(4), which requires that "A record of the vote of each member of the Committee on each record vote on any measure or matter before the Committee shall be made publicly available in electronic form within 48 hours." By preventing any vote from occurring, Johnson systematically denied public transparency about committee member positions on constitutional oversight, violating mandatory disclosure requirements designed to ensure democratic accountability and preventing citizens from evaluating their representatives' positions on Article I oversight duties through the voting records that Rules Committee procedures guarantee will be made publicly available.

103. Johnson's vote prevention despite supermajority control (¶1) demonstrates criminal intent because constitutional logic shows avoiding democratic process proves consciousness of wrongdoing rather than legitimate constitutional reasoning.

104. Johnson's vote prevention despite supermajority control (¶1) creates procedural fraud when compared to Texas Democrats precedent (¶18), proving criminal rather than political motivation through objective comparison with recognized legislative tactics.

105. Over 150 years of documented quorum breaks (1870, 1979, 2003, 2021, 2025) demonstrate that when legislators want to prevent voting, they must physically leave because they lack control over outcomes. Johnson's conduct has no historical precedent because it's logically impossible to justify preventing voting while controlling the result. Even highly partisan politicians follow constitutional procedures when pursuing controversial goals (Texas Republicans using legitimate arrest warrants and quorum restoration for Trump-coordinated gerrymandering), proving Johnson's procedural violations serve criminal objectives that cannot survive democratic accountability. August 18, 2025 documentation shows enforcement mechanisms have escalated beyond traditional civil arrest authority, with Rep. Nicole Collier "locked inside the Texas Capitol" under "permission slip" system requiring signed agreements for DPS escorts between legislative sessions, exceeding Texas Supreme Court 2021 authority to "physically compel attendance" which historically ended when quorum was restored. This systematic escalation where constitutional compliance now receives indefinite detention through mandatory surveillance agreements while unprecedented constitutional violations receive complete immunity proves systematic inversion that criminalizes legislative independence and rewards executive subordination through active governmental corruption extending traditional civil arrest authority beyond constitutional limits.

106. The enforcement mechanisms for constitutional quorum-breaking—civil arrest, compelled attendance, daily fines—serve to restore democratic process, not criminally punish legislators. Yet Johnson faces no enforcement whatsoever for destroying democratic process through unconstitutional vote prevention. This reveals the true nature

of the enforcement asymmetry: vigorous civil enforcement exists for using constitutional procedures (breaking quorum), while complete immunity exists for violating constitutional procedures (preventing votes), proving systematic protection of criminal objectives over constitutional compliance.

107. The constitutional and statutory framework for compelling attendance demonstrates that even extraordinary enforcement powers—including arrest—exist solely to restore democratic voting processes, not prevent them. Article I, Section 5 of the U.S. Constitution and parallel state provisions authorize arrest specifically to "compel the Attendance of absent Members" so voting can occur. Johnson's prevention of voting while members are present and willing to vote inverts this entire constitutional framework: the Constitution authorizes arrest to enable voting, yet Johnson faces no consequences for preventing voting. This proves his conduct serves criminal objectives

108. If Trump-coordinated partisan gerrymandering can be pursued through constitutional procedures, Johnson's constitutional process violations prove criminal objectives requiring procedural fraud. The comparison eliminates all political defenses because it demonstrates that even controversial partisan political goals operate within constitutional procedural requirements, while criminal objectives require constitutional violations to avoid democratic accountability. This transforms constitutional impossibility analysis from novel theory to objective proof validated by contemporary political comparison.

### 3. Federal Rules and Congressional Procedure Citations

109. Johnson's procedural fraud constitutes "fraud upon the court" under Federal Rule of Civil Procedure 60(d)(3), which provides relief without statute of limitations when

conduct "subverts the integrity of the court itself" through an "unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter." *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944). Johnson's systematic prevention of democratic voting despite supermajority control subverts the integrity of constitutional governance through unconscionable schemes preventing constitutional accountability.

110. House Rule XI, Clause 2(a) requires that "Each committee shall adopt written rules governing its procedure" and "Such rules shall be publicly adopted by the committee in open session," with "A copy of such rules shall be published in the Congressional Record within 30 days." Johnson's prevention of committee voting violates these mandatory procedures, while House Rule XI, Clause 2(n) authorizes electronic voting systems requiring regulatory oversight and record maintenance that Johnson systematically circumvented to avoid constitutional accountability.

111. Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), procedural due process requires analysis of: (1) the private interest affected by official action; (2) the risk of erroneous deprivation through current procedures and value of additional safeguards; and (3) the government interest in administrative efficiency. Johnson's systematic corruption of committee voting procedures fails this test by creating high risk of erroneous constitutional duty abandonment without legitimate government interest in protecting criminal associates over constitutional compliance.

112. Jefferson's Manual of Parliamentary Practice, incorporated by House Rule XXIX, establishes fundamental democratic procedures that cannot be circumvented through fraud, including majority rule principles and minority rights protections. Johnson's

prevention of any voting despite controlling majority violates these foundational parliamentary requirements that protect democratic decision-making processes from autocratic manipulation.

### 4. Constitutional Logic Impossibility Through Factual Coordination Contradictions

113. Johnson's constitutional duty abandonment violates Article I, Section 1 through **fundamental constitutional contradiction** where Speaker simultaneously acknowledges criminal reality requiring oversight while deferring oversight authority to officials who deny criminal reality. Constitutional text requires Congress exercise independent judgment on matters within congressional authority, making coordination with factual deniers **constitutionally incompatible** with legitimate constitutional purposes. Johnson's recorded admission that crimes are real ("real victims here") combined with his deference to Trump's "hoax" position creates perfect constitutional trap where both logical possibilities prove criminal intent: constitutional coordination cannot serve legitimate governance purposes when coordinators disagree about basic facts requiring governmental response.

## Section E: Federal Transparency Law Violations Through Executive Coordination

114. Johnson's coordination with Trump extends beyond oversight prevention to enabling systematic executive usurpation of legislative authority. Trump's public admission to authoring H.R. 1 ("my one big beautiful bill") renders Article I, Section 7 constitutionally impossible to execute because the Constitution requires bills "which shall have passed" Congress be "presented to the President" - constitutional language that becomes meaningless when presenting legislation to its author. From every logical legal perspective, presidential-authored legislation should be delivered to Congress with the President's signature already attached, eliminating the entire constitutional review process. This systematic abandonment of Article I, Section 1 duties requiring "ALL legislative Powers" be vested in Congress rather than executive coordination proves systematic rather than isolated coordination to abandon congressional independence.

115. Johnson's coordination rationales ("political games," "political battering ram," "protect innocent people") are not recognized FOIA exemptions under 5 U.S.C. § 552(b) as proven through systematic exemption analysis in Appendix IV. Political coordination with executive branch cannot override statutory disclosure duties or create unauthorized exemptions.

116. Under **5 U.S.C. § 552b**, congressional committee proceedings must be open to public unless specifically exempted. Johnson's cancellation of Rules Committee meetings to prevent oversight violates statutory transparency requirements through coordination with executive preferences.

117. Johnson's coordination with executive branch creates systematic circumvention of federal transparency laws by using executive coordination as justification for avoiding congressional disclosure obligations and public transparency requirements.

## Congressional Intent for Government Transparency

118. Congress enacted FOIA with "general philosophy of full agency disclosure" as documented in S. Rep. No. 813, 89th Congress (1965), finding that prior law "had become more of a withholding than a disclosure mechanism." The House debate titled "Clarifying and Protecting the Public's Right to Know" (112 Cong. Rec. 13007 (1966)) emphasized citizen access to government information as essential for democratic oversight, establishing that Johnson's coordination rationales are not recognized FOIA exemptions under **5 U.S.C. § 552(b)**.

119. The Government in the Sunshine Act passed with overwhelming Congressional support (Senate 94-0, House 390-5) based on the fundamental principle in H.R. Rep. No. 94-880 (1976) that "the people are the only legitimate foundation of power, and it is from them that the constitutional charter...is derived." Congress declared that "the public is entitled to the fullest practicable information regarding the decision-making processes of the Federal Government," establishing "presumption in favor of open meetings" that Johnson's cross-branch coordination systematically violates.

120. The FOIA Amendments Act of 1974 (P.L. 93-502), enacted over President Ford's veto, strengthened judicial review and enforcement mechanisms based on Congressional recognition that government transparency serves as foundation for democratic accountability. The 2016 FOIA Improvement Act (P.L. 114-185) reinforced Congressional commitment to transparency as default government practice with

"presumption of openness" standard, proving Johnson's coordination exemptions violate clear Congressional intent for maximum disclosure with narrow exemptions.

121. Congress specifically intended narrow construction of transparency exemptions, with committee reports consistently emphasizing that exemptions protect only against disclosure causing substantial harm to specifically defined interests. Johnson's political coordination rationales ("political games," "protect innocent people") appear nowhere in statutory exemptions and violate Congressional intent that transparency requirements cannot be circumvented through informal decision-making or cross-branch coordination to avoid statutory disclosure duties.

**Section F: Constitutional Process Impossibility Through Presidential Authorship**

122. The Constitution establishes mandatory sequence where "Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President." This constitutional text creates logical prerequisites: (1) "which shall have passed" uses past tense requiring Congress complete legislative work first; (2) "be presented to the President" assumes President receives work created by others; (3) "If he approve" requires Presidential evaluation of unfamiliar congressional work; and (4) "ten Days" provides time needed to review legislative work the President did not author.

123. Trump's authorship of H.R. 1 ("my one big beautiful bill") violates Article I, Section 7 constitutional requirements because: (1) Cannot "present" legislation to its author - constitutional text becomes meaningless; (2) No genuine "approval" process exists -

author already approved by writing it; (3) 10-day consideration period becomes fraud - author doesn't need time to review own work; and (4) Presidential "objections" are impossible - constitutional framework assumes author can object to own writing. From every logical legal perspective, presidential-authored legislation should be delivered to Congress with the President's signature already attached, eliminating the entire Article I, Section 7 constitutional framework.

124. Johnson enabled constitutional impossibility by: (1) allowing Trump to author H.R. 1 while maintaining constitutional process charade; (2) participating in fraudulent "presentation" of Trump's work back to Trump for his "consideration"; (3) enabling fake "10-day review" of legislation Trump already knew because he wrote it; and (4) coordinating systematic deception where constitutional process requirements become meaningless theater rather than constitutional compliance. Johnson's enablement transforms constitutional governance into constitutional fraud while abandoning Speaker duties to protect Article I constitutional integrity.

125. Johnson's systematic participation in constitutional process fraud creates environment enabling criminal associate protection because: (1) constitutional duty abandonment becomes normalized through systematic violations; (2) separation of powers breakdown eliminates independent oversight capacity; (3) democratic accountability destruction through constitutional process corruption; and (4) institutional authority weaponization for criminal enterprise protection rather than constitutional governance serving systematic criminal conspiracy coordination.

**Section G: Comprehensive Criminal Conspiracy Evidence**

126. Johnson's deliberate linguistic manipulation of victim classifications provides definitive evidence of criminal enterprise methodology as documented in Exhibits D-1, A-14. Academic research documented in Exhibit D-1 by Dr. Jennifer Freyd shows this as "institutional DARVO" (Deny, Attack, Reverse Victim and Offender), where institutions weaponize victim protection rhetoric to create "shields of elitist invisibility" that systematically protect perpetrators while claiming to protect victims. Peer-reviewed research in Exhibit D-1 demonstrates that 72% of perpetrators use DARVO tactics when confronted, with Johnson's language mirroring identical suppression tactics documented across decades of institutional abuse cases including Catholic Church, Penn State, USA Gymnastics, and BBC scandals. Linguistic analysis proves that while maintaining consistent terminology on all other topics, Johnson deliberately varies victim terminology across four different formulations within single statements, proving conscious manipulation rather than normal speech patterns. Johnson's specific formulation— "threading a fine needle" between exposing evil and "protecting the innocent"—mirrors nearly identical justifications used across these institutional suppression cases, proving systematic rather than isolated protective rhetoric designed to suppress evidence while maintaining moral high ground.

127. Johnson's recorded response to direct questioning about Epstein file release demonstrates systematic DARVO methodology through linguistic priority ordering. When asked whether files should be released, Johnson's immediate primary response prioritizes protecting "innocent people's names and reputations" (criminal associates)

before later adding victim protection as secondary justification. This linguistic ordering proves Johnson's true motivation serves criminal associate reputation protection using victim protection as cover story, validating academic research on institutional DARVO where perpetrator protection is disguised as victim protection.

128. Johnson's response structure follows documented DARVO patterns where institutions weaponize victim protection rhetoric to protect perpetrator networks. His immediate concern for "innocent people's names and reputations" followed by secondary victim protection claims demonstrates the exact reversal documented in academic research where real motivation (criminal associate protection) is concealed behind false victim protection rationale, proving systematic rather than legitimate victim protection concerns.

129. Johnson's spontaneous linguistic prioritization of criminal associate reputation protection over victim protection proves consciousness that his primary motivation serves criminal rather than victim interests. Genuine victim protection advocates prioritize victims first, not criminal associate reputations, making Johnson's reversed priority order evidence of systematic criminal enterprise methodology using victim protection rhetoric to conceal criminal associate protection serving systematic constitutional duty abandonment.

130. Johnson's evolving terminology demonstrates systematic attempt to expand victim protection beyond legal boundaries through: "Innocent people" (associates rather than actual victims); "Innocent victims" (redundant terminology - victims are inherently innocent); "Victims" (standard legal terminology); and "Some were minors, some were not" (trivial distinction for identical protection). Johnson's linguistic manipulation

attempts to reclassify Category 3 (Criminal Associates) as Category 1 (Victims) to provide illegal governmental protection from reputational accountability, violating federal statutory boundaries designed to protect actual trafficking victims while ensuring criminal network accountability.

131. Johnson's "protecting the innocent" framework constitutes systematic professional fraud because courts can only protect "victims" (specific legal category with established procedures) not generic "innocent people" (moral concept lacking legal authority). As a constitutional attorney, Johnson must understand that courts cannot determine "innocence" without: (1) proper legal process establishing innocence determinations; (2) jurisdiction over specific parties within case parameters; (3) constitutional authority for pre-adjudication innocence determinations; and (4) legal procedures defining protection mechanisms. Johnson's use of moral language to justify legal authority abandonment violates Model Rule 1.1 (professional competence) and Model Rule 8.4(c) (dishonesty) through systematic confusion of legal categories proving willful deception rather than legitimate constitutional interpretation.

132. Legal requirements for court protection include: establish jurisdiction (court must have authority over specific parties); legal determination (status determined through proper judicial procedures); specific protections (applied based on legally defined categories); and jurisdictional limits (protection limited to parties within case parameters). Johnson's "innocent" framework fails every requirement: no jurisdictional basis (who has authority to determine "innocence"?); no legal procedure (how is "innocence" established without adjudication?); unlimited expansion (anyone can claim "innocence" without legal standard); and no court authority (executive branch cannot

make innocence determinations for congressional oversight). This creates constitutional impossibility where Johnson uses non-existent legal authority to justify abandoning constitutional duties that supersede any claimed protection for undefined categories existing outside court jurisdiction.

132A. Johnson's systematic terminology manipulation includes the critical admission about protecting "anybody who's been swept up" in investigations. Victims are NOT "swept up" - they are targeted, harmed, trafficked through criminal enterprise operations. People "swept up" are criminal associates caught in investigations who have zero legal protection from disclosure regardless of wealth, social connections, or claimed innocence. Johnson's "swept up" language proves criminal associate protection rather than legitimate victim protection, demonstrating consciousness that his expanded terminology serves criminal rather than victim interests through systematic manipulation of legal categories.

132B. Johnson's protection framework inverts fundamental legal priority where child welfare protection supersedes criminal associate comfort under universal legal principles across all American jurisprudence. Johnson prioritizes criminal associate protection over constitutional child welfare duties, abandons Article I oversight designed to prevent child exploitation, creates systematic privilege violating equal protection under law, and enables ongoing criminal enterprise through constitutional duty abandonment. The Crime Victims' Rights Act (18 U.S.C. § 3771) and Trafficking Victims Protection Act (22 U.S.C. § 7101) create precise legal categories that exclude criminal associates from victim protection regardless of claimed innocence or social

status, making Johnson's terminology expansion systematic violation of established federal statutory boundaries.

133. Johnson's repeated use of executive branch "credible evidence" filtering as documented in Exhibits A-4 and A-14 proves systematic usurpation of congressional fact-finding authority because: (1) Congress has exclusive constitutional authority to determine evidence credibility for oversight purposes; (2) executive branch constitutional role is limited to document authentication under Federal Rules of Evidence Rule 901; (3) credibility assessment belongs to constitutional fact-finder in each context - Congress for oversight, courts for legal proceedings; and (4) Johnson's acceptance of executive credibility filtering abandons core Article I oversight authority enabling criminal protection through unconstitutional executive gatekeeping.

134. Johnson's coordination as documented in Exhibit A-4 violates statutory framework because: (1) no constitutional provision grants executive authority to filter congressional oversight through credibility determinations; (2) FBI/DOJ investigation files are presumptively authentic through professional chain of custody; (3) FBI/DOJ files have presumptive high credibility through professional investigative standards; and (4) executive filtering serves criminal associate protection rather than legitimate evidence gatekeeping, violating separation of powers by subordinating legislative fact-finding to executive criminal protection preferences.

135. Johnson's coordination with executive branch to accept non-existent executive credibility gatekeeping authority proves systematic criminal enterprise using invented constitutional powers that exist nowhere in legal framework. Executive branch claiming authority to determine "credible evidence" for congressional oversight violates separation

of powers while Congress accepting such authority abandonment violates Article I constitutional duties. This coordinated constitutional authority invention serves criminal associate protection through systematic prevention of congressional independent fact-finding that would expose criminal networks to constitutional accountability, proving criminal conspiracy using governmental authority for criminal protection rather than constitutional governance.

136. The Constitution establishes distinct spheres of credibility determination authority: Congressional oversight (**2 U.S.C. §§ 192, 194**) grants Congress exclusive authority to evaluate evidence credibility for legislative accountability purposes; Judicial proceedings (**Fed. R. Evid. 607**) reserve credibility determinations to judges and juries as constitutional fact-finders; Administrative proceedings (**5 U.S.C. § 556**) authorize agencies to assess credibility within their regulatory jurisdiction. No constitutional provision grants executive branch authority to filter congressional oversight through executive credibility determinations, making Johnson's acceptance of such filtering a systematic violation of separation of powers that enables criminal protection through unconstitutional executive gatekeeping over legislative fact-finding authority.

137. Johnson and Attorney General Bondi's identical professional capture methodology proves systematic criminal enterprise across branches rather than individual professional misconduct, with both demonstrating professional competence followed by systematic abandonment after Trump coordination as documented in ¶4 and Exhibits A-12, A-17.

138. The absence of public legal challenge to obvious constitutional violations by Attorney General Bondi and Deputy Attorney General Blanche results from security clearance restrictions, career destruction risks, professional assumptions that

constitutional enforcement occurs through other channels, and procedural barriers creating illusion that systematic prosecutorial capture cannot be challenged, proving coordinated professional constraint enabling constitutional violations rather than constitutional compliance validated by legal community review.

139. Whatever authority the government claims to justify executive credibility gatekeeping and prosecutorial conflicts fails constitutional analysis because constitutional system cannot authorize logic it does not contain - no administrative procedure can create authority to violate Article I congressional oversight or *Young v. Vuitton* prosecutorial neutrality requirements, requiring immediate constitutional enforcement through independent prosecution transcending captured federal apparatus.

140. Johnson's coordination with executive branch to accept non-existent executive credibility gatekeeping authority proves systematic criminal enterprise using invented constitutional powers that exist nowhere in legal framework. Executive branch claiming authority to determine "credible evidence" for congressional oversight violates separation of powers while Congress accepting such authority abandonment violates Article I constitutional duties. This coordinated constitutional authority invention serves criminal associate protection through systematic prevention of congressional independent fact-finding that would expose criminal networks to constitutional accountability, proving criminal conspiracy using governmental authority for criminal protection rather than constitutional governance.

141. Johnson and Trump's use of identical fraudulent terminology across both victim expansion and evidence filtering proves systematic cross-branch criminal conspiracy rather than coincidental similarity:

- Victim protection language: Trump ("wouldn't want innocent people to get hurt") / Johnson ("protect innocent people")
- Evidence filtering language: Trump ("credible files") / Johnson ("all credible evidence")
- Combined methodology: Expand victim categories + filter evidence access = comprehensive criminal protection

142. Trump's "stolen worker" cover story analysis (¶87) combined with his criminal protection confession (¶9) proves consciousness that real explanations for criminal associate relationships require false narratives to avoid accountability, validating Johnson's coordination serves identical criminal associate protection through fraudulent victim protection rhetoric rather than constitutional compliance.

143. Johnson's recorded response demonstrates perfect DARVO methodology through revealing linguistic priorities: when directly asked about Epstein file release, Johnson immediately prioritizes protecting "innocent people's names and reputations" before adding victim protection as secondary justification. This linguistic ordering proves Johnson's true motivation serves criminal associate reputation protection using victim protection as cover story, validating Dr. Jennifer Freyd's research showing 72% of perpetrators use DARVO tactics to protect perpetrator networks while claiming victim protection authority.

144. Johnson's systematic deployment of dual linguistic frauds simultaneously proves organized criminal methodology rather than constitutional interpretation through comprehensive deception spanning multiple legal domains. Johnson demonstrates normal linguistic capacity through consistent terminology on all legitimate constitutional topics, proving baseline competence, yet employs systematic manipulation through deliberate inconsistency exclusively on criminal protection terminology, proving conscious

deception rather than interpretive confusion. This coordinated deception extends across branches using identical false legal classifications that appear nowhere in constitutional or statutory framework, while Johnson abandons constitutional authority through fraudulent legal justifications that exist nowhere in American law. Johnson's linguistic pattern creates constitutional impossibility of legitimate constitutional interpretation because consistent language on all constitutional topics proves normal interpretive capacity, yet systematic manipulation on criminal protection topics proves conscious deception, while dual fraud vectors prove comprehensive criminal methodology and coordinated terminology proves criminal conspiracy rather than individual misconduct. This systematic expansion of victim classifications beyond legal boundaries violates federal statutory definitions including 18 U.S.C. § 3771 (Crime Victims' Rights Act) and 22 U.S.C. § 7101 (Trafficking Victims Protection Act), which exclude criminal associates from victim protection regardless of wealth, social status, or claimed innocence. Johnson's terminology expansion creates unauthorized legal protections that exist nowhere in American law while violating established federal statutory boundaries designed to protect actual trafficking victims through proper redaction protocols that maintain perpetrator identification and criminal network exposure, proving systematic criminal enterprise methodology using professional fraud to enable criminal associate protection through constitutional authority abandonment rather than legitimate constitutional interpretation.

145. The Department of Justice July 7, 2025 memo establishes that "The FBI and the department went through its investigative files related to Epstein—digital searches of databases, hard drives, network drives and physical searches of cabinets, desks and

closets—to find any and all relevant materials," documenting completion of exhaustive review processing over 300 gigabytes of data, over 10,000 videos and images, and 40 computers and electronic devices as documented in Exhibit B-5,

B-5, B-6, proving all victim protection work Johnson claimed to require was already completed before his constitutional duty abandonment.

146. Johnson's coordination with Trump administration concealed DOJ's completed exhaustive review to create false justification for constitutional duty abandonment, proving systematic fraud where every technical justification Johnson offered was demonstrably false because DOJ had already completed all victim identification, sensitive material categorization, protection protocol implementation, and release determinations with victim protection measures.

147. Johnson knew DOJ work was complete when he abandoned constitutional duties, as evidenced by coordinated messaging with Trump administration using identical false technical justifications despite documented completion of all necessary victim protection work, proving criminal protection motivation rather than victim protection concerns through deliberate concealment of completed government processing that eliminated all legitimate barriers to congressional oversight.

148. Johnson's victim protection defense is constitutionally impossible because: (1) DOJ already completed all victim protection work Johnson claimed to require; (2) technical feasibility proven through DOJ's successful processing of 300+ gigabytes with victim protection; (3) all barriers eliminated through DOJ exhaustive review and protection protocol implementation; and (4) criminal protection motivation established through

systematic concealment of completed victim protection work that already enabled constitutional oversight.

149. Concurrent with Johnson's constitutional duty abandonment, Deputy Attorney General Todd Blanche granted limited immunity to Ghislaine Maxwell for nine hours of testimony over two days about "maybe 100 different people" while President Trump publicly considered Maxwell's pardon as documented in Exhibits B-5 and B-6, proving systematic criminal protection enterprise coordinated across legislative and executive branches using completed DOJ work to protect criminal associates rather than enable constitutional accountability through already feasible congressional oversight.

150. Trump's August 5, 2025 response to Maxwell prison transfer questioning demonstrates systematic criminal enterprise deniability by simultaneously denying knowledge ("I didn't know about it at all") while providing unprompted extensive justification for coordination he claims not to know about as documented in Exhibit A-10, proving consciousness of systematic coordination requiring defensive explanation rather than legitimate governmental ignorance.

151. Trump's response creates logical contradiction because: (1) cannot defend decision-making process while claiming ignorance of decisions; (2) cannot provide protective rationale for actions while unaware of those actions; (3) cannot know actions are "totally appropriate" without knowledge of what actions occurred; and (4) unprompted extensive justification of Blanche's "totally above board" conduct proves consciousness of coordination appearing problematic requiring defensive explanation.

152. Trump's deployment of identical protective language ("people that should not be involved...not hurt by something that would be very, very unfortunate, very unfair")

mirrors Johnson's documented victim protection expansion, proving systematic rather than coincidental coordination using identical DARVO methodology across legislative and executive branches serving criminal associate protection through coordinated governmental authority abuse.

153. In *Young v. United States ex rel. Vuitton*, 481 U.S. 787 (1987), the Supreme Court held that "a prosecutor may not have any interest, financial or otherwise, that might compromise the disinterested pursuit of justice," while *Marshall v. Jerrico*, 446 U.S. 238 (1980), established that due process requires "a neutral and detached judge" because "[a] fair trial in a fair tribunal is a basic requirement of due process." Deputy Attorney General Todd Blanche's financial dependence on Trump through his $180,000+ DOJ salary, combined with Trump's authority to terminate his employment, creates the exact financial interest in outcome that these precedents prohibit, violating constitutional requirements for neutral prosecutorial decision-making and enabling systematic criminal enterprise operation through captured justice system.

154. Blanche's immunity decisions regarding Maxwell violate constitutional due process because Blanche cannot serve as neutral prosecutor while financially and professionally dependent on Trump, the subject of investigation. Blanche's DOJ salary depends entirely on Trump's favor, Trump appointed him to the position, and Trump retains authority to remove him, creating systematic financial interest in protecting Trump through immunity terms that minimize Trump's criminal exposure rather than maximize public accountability. This prosecutorial capture violates **18 U.S.C. § 208** (financial interest in official actions), **Model Rule 1.7** (conflicted representation), and Fourteenth Amendment due process requirements for neutral decision-makers, enabling systematic criminal

enterprise operation where investigation targets control their prosecutors rather than face objective justice.

155. The Supreme Court's condemnation of financially interested prosecutors extends beyond *Young v. Vuitton* to fundamental due process principles. In *Ward v. Village of Monroeville*, 472 U.S. 115 (1985), the Court held that "The mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court," establishing that financial dependency on the subject of proceedings violates due process. Blanche's position parallels this exactly—his financial security depends on maintaining Trump's favor, making him "partisan to maintain" Trump's protection rather than pursue disinterested justice, creating identical constitutional violation condemned by Supreme Court precedent.

156. Any legal authority the government claims to justify Blanche's prosecutorial role necessarily fails legal framework analysis because *Young v. United States ex rel. Vuitton* establishes absolute prohibition that "a prosecutor may not have any interest, financial or otherwise, that might compromise the disinterested pursuit of justice." Potential justifications including DOJ conflict waivers, succession statutes, classified directives, or internal ethics approvals all violate Supreme Court constitutional requirements because no regulatory, statutory, executive, or administrative authority can override constitutional due process for neutral prosecutors.

157. Blanche's complete financial dependency on Trump ($180,000+ salary, career advancement, professional reputation) creates **irreconcilable conflict with neutral prosecution** regardless of claimed authority because salary and career security requiring Trump's satisfaction violates absolute constitutional prohibition on prosecutorial financial

interests in outcomes affecting former clients, proving systematic capture rather than legitimate prosecutorial independence.

158. Nixon's firing of prosecutors investigating him created obvious constitutional crisis that everyone recognized, but Trump's appointment of prosecutors investigating him creates hidden constitutional crisis that appears legitimate while being systematically corrupt. Blanche's situation is more insidious than the Saturday Night Massacre because it maintains facade of proper legal process while ensuring prosecutorial decisions serve the appointing authority rather than public interest, proving systematic capture of justice system through appointment power rather than obvious obstruction through firing power.

159. Johnson's systematic creation of multiple logical impossibilities proves criminal conspiracy through **objective analytical proof** rather than subjective constitutional interpretation. Johnson's recorded admission "I've never seen the Epstein evidence. It wasn't in my lane" while simultaneously coordinating with "President Trump, with the Department of Justice, with the FBI" creates constitutional impossibility because officials cannot constitutionally coordinate on matters outside their knowledge and authority while preventing qualified congressional oversight based on admitted incompetence. Johnson's representation as "litigator" and "constitutional law attorney" while claiming ignorance of evidence that any competent attorney would recognize as meeting federal RICO prosecution standards violates Model Rule 1.1 professional competence requirements, proving willful constitutional violations rather than legitimate professional limitations. Johnson's four systematic false technical claims create constitutional impossibility of legitimate professional error: (1) wrong CSAM statute claims; (2) false grand jury testimony requirements; (3) inadequate victim protection assertions; (4) claiming "the

house rules resolution sets a good standard and requires all credible evidence to be released" (Ex. A-1, ¶35) when H.Res. 5 contains zero references to credible evidence (Ex. B-4) while actual congressional oversight authority derives from 2 U.S.C. §§ 192, 194, proving systematic constitutional authority laundering through false legal hierarchies. Johnson's claim of "intellectual consistency" when directly confronted with obvious contradiction between 2023 and 2025 positions proves consciousness of systematic deception because constitutional analysis shows Johnson understood correct principle yet systematically violated identical principle while claiming consistency. Johnson's coordination with Trump while maintaining Epstein crimes are serious but Trump maintains they're a "hoax" creates logical trap where all possible explanations prove criminal intent through **systematic logical contradiction precluding legitimate coordination**. These multiple logical impossibilities eliminate all possible defenses through objective analysis, proving systematic criminal conspiracy using governmental authority for criminal associate protection rather than constitutional compliance through coordinated constitutional duty abandonment serving criminal enterprise protection documented in Exhibits A-1, A-2, A-4, A-13, B-4, and Appendix I.

160. Trump's August 5, 2025 extensive praise of Blanche regarding Maxwell coordination (Exhibit A-10) provides contemporary validation of systematic prosecutorial capture where the subject of investigation defends prosecutorial decisions affecting his own criminal exposure while maintaining facade of neutrality.

161. Johnson's admission of incompetence regarding Epstein files while preventing congressional oversight creates multiple constitutional violations proving criminal conspiracy through systematic democratic process destruction. Johnson's recorded

statement "I've never seen the Epstein evidence. It wasn't in my lane" while simultaneously coordinating with executive branch to prevent qualified congressional oversight violates Article I by: (1) usurping authority of representatives who possess knowledge and jurisdiction over oversight matters; (2) preventing qualified members from exercising Article I duties based on Johnson's admitted lack of qualifications rather than constitutional authority; (3) subordinating congressional expertise to individual ignorance contrary to constitutional structure requiring informed legislative decision-making; (4) destroying democratic process where unqualified Speaker prevents qualified representatives from performing constitutional duties in their areas of constitutional knowledge and authority; (5) coordinating on matters outside his knowledge violates constitutional requirements for informed decision-making; (6) deferring to executive branch on matters he admits not understanding abandons Article I independence required by separation of powers; and (7) using Speaker authority to prevent oversight of matters outside his expertise exceeds constitutional limits while serving criminal conspiracy using admitted ignorance as justification for preventing qualified congressional oversight serving criminal protection rather than constitutional governance, proving systematic constitutional fraud documented in Exhibits A-2, A-4.

162. Johnson's claim that Epstein evidence "wasn't in his lane" while serving as Speaker creates constitutional impossibility because: (1) Johnson represents himself as a "litigator" with professional legal training; (2) any competent litigator would recognize that publicly available Trump-Epstein evidence (photographs, flight logs, signed communications, continued association) exceeds evidentiary standards routinely used for RICO prosecutions of ordinary citizens; (3) professional legal competence requires

recognition of criminal association evidence meeting federal prosecutorial standards; and (4) claiming ignorance of evidence that any litigator should recognize proves willful constitutional violations rather than legitimate legal judgment.

163. Johnson's representation of himself as a "litigator" combined with his claimed ignorance of Epstein evidence creates constitutional fraud because: (1) professional legal training requires recognition that publicly documented associations meet federal criminal prosecution standards; (2) any competent attorney would recognize RICO-level evidence in Trump-Epstein documentation; (3) using claimed professional ignorance to prevent constitutional oversight violates professional legal obligations and constitutional duties; and (4) systematic protection of criminal associations that exceed ordinary RICO standards proves deliberate criminal conspiracy rather than professional legal judgment.

164. Exhibit A-9 provides definitive evidence that Trump's inappropriate relationships with young women represent systematic behavioral patterns rather than isolated incidents, with Trump's systematic recruitment operations (¶86), RICO enterprise evidence (¶90), and victim authentication (¶84) combined with additional corroborating evidence including flight logs documenting young women's transportation, Trump's continued association with Epstein after 2008 conviction, and consciousness admission "this would be my form of alcoholism" proving systematic targeting with awareness of inappropriate compulsive behavior. This comprehensive evidence establishes systematic criminal enterprise operation requiring constitutional oversight that Johnson's coordination systematically prevents through constitutional duty abandonment serving criminal protection rather than legitimate governmental purposes.

165. The convergence of Trump's recorded recruitment admissions documented in Exhibit A-9, victim testimony validation, systematic behavioral consciousness ("alcoholism" comparison), and Johnson's constitutional duty abandonment creates statistical impossibility of coincidental evidence. Johnson's prevention of oversight serves documented systematic criminal behavior spanning decades rather than legitimate governmental purposes, proving criminal conspiracy coordination across legislative and executive branches to protect systematic recruitment operations targeting minors through employment-based access and systematic governmental authority abuse. The statistical probability that Johnson's constitutional duty abandonment coincidentally protects systematic criminal behavior documented through Trump's own recorded admissions approaches zero, proving criminal conspiracy rather than legitimate constitutional interpretation serving criminal enterprise protection through coordinated governmental authority rather than constitutional compliance.

166. Trump's defense strategy creates constitutional impossibility of legitimate legal defense because every element intended to prove innocence instead proves criminal enterprise participation: (1) "Falling out" confession proves territorial criminal enterprise disputes rather than innocent business disagreement; (2) "Stolen workers" explanation proves both parties engaged in systematic recruitment rather than legitimate employment competition; (3) Systematic age-specific hiring admissions prove predatory recruitment rather than standard business practice; and (4) Personal compulsion confession ("alcoholism") proves criminal rather than commercial motivation. This constitutional impossibility where defendant's defense strategy constitutes confession of RICO criminal enterprise creates perfect validation of Johnson's criminal conspiracy to abandon

constitutional duties protecting confessed federal criminal activity rather than legitimate governmental interests requiring constitutional oversight that Johnson systematically prevents through coordinated constitutional duty abandonment.

167. Beyond Johnson's systematic legislative coordination, cabinet-level criminal coordination provides definitive evidence of systematic criminal enterprise through Transportation Secretary Sean Duffy's July 16, 2025 congressional testimony documented in Exhibit A-18. The systematic convergence during preparation of this constitutional complaint of Johnson's constitutional abandonment, Trump's criminal admissions, Maxwell's preferential prison transfer, FBI constitutional usurpation, and coordinated cabinet-level deflection provides perfect real-time validation of ongoing criminal enterprise using governmental authority. Duffy employed systematic deflection identical to Johnson's pattern: "I don't know all the data on it," "I gotta leave that to Pam Bondi and Kash Patel," and "It's outta my space" - proving coordinated messaging across executive branch officials that mirrors Johnson's constitutional duty abandonment through identical protective rationales. This coordination—occurring as constitutional violations were being documented for judicial review—transcends coincidental violations into documented criminal conspiracy proving active criminal enterprise operation that continues expanding during the period when accountability should be increasing, creating statistical impossibility of coincidental timing that eliminates all coincidence explanations while proving systematic criminal enterprise coordination rather than individual constitutional violations requiring immediate prosecution under RICO standards.

168. Vice President Vance's July 28, 2025 testimony documented in Exhibit A-15 provides definitive proof of systematic executive branch coordination where the Vice President deploys identical linguistic manipulation frameworks ("credible information" filtering, "full transparency" while maintaining systematic concealment, systematic deflection to previous administrations) proving organized criminal methodology across the highest levels of executive authority. Vance's coordination using Trump and Johnson's exact false legal terminology creates statistical impossibility of coincidental similarity, proving systematic criminal enterprise coordination rather than individual constitutional violations. The precision of identical false legal justifications across legislative leadership (Johnson), executive leadership (Vance), and cabinet officials (Duffy) eliminates all coincidence explanations while proving coordinated criminal methodology using governmental authority for systematic criminal associate protection.

169. Johnson's Meet the Press admission creates logical impossibility proving criminal rather than governmental motivation because Johnson cannot simultaneously believe Epstein crimes are real and serious (documented in Exhibit A-2: "Oh, it's not a hoax. Of course not. I mean, they're real victims here") while deferring congressional authority to Trump who explicitly declared July 16, 2025 that the entire matter is "the Epstein hoax" and "It's all been a big hoax" documented in Exhibit A-19, followed by his August 7, 2025 reiteration that "the whole thing is a hoax...total bullshit" documented in Exhibit A-16. This timeline proves Johnson coordinated with Trump AFTER Trump had already publicly declared the investigation a "hoax," making Johnson's coordination constitutionally impossible because no constitutional purpose could justify coordinating oversight with someone who had already denied the factual predicate requiring oversight.

Johnson's coordination creates logical proof of criminal intent where all possible logical paths prove criminal enterprise: if Johnson genuinely trusts Trump's "hoax" assessment declared before their coordination, then Johnson's victim protection rhetoric constitutes systematic fraud; if Johnson believes crimes are real but coordinates with someone who publicly declared it a "hoax" before their coordination, then Johnson's constitutional authority abandonment constitutes criminal conspiracy using governmental coordination for criminal protection rather than constitutional compliance. The systematic timing—Trump's "hoax" declaration (July 16) preceding Johnson's coordination period—proves systematic deception rather than legitimate governmental disagreement, requiring immediate judicial intervention to prevent continued criminal enterprise operation through coordinated constitutional duty abandonment.

### Section H: Systematic Constitutional Duty Abandonment and Constitutional Crisis

#### 1. Systematic Constitutional Duty Abandonment

170. Johnson's systematic Article I violations through executive coordination include: a. Canceled July 24th, 2025 House votes specifically to prevent constitutionally required oversight while coordinating with executive preferences b. Disbanded Rules Committee proceedings when members sought to perform Article I constitutional duties regarding government accountability c. Truncated legislative week to avoid bipartisan constitutional oversight resolution, abandoning Article I obligations for executive coordination d. Coordinated systematic obstruction with House leadership and executive branch to prevent constitutional duty performance through shared political objectives

171. Johnson's conduct represents first documented case in American history where House Speaker explicitly admitted abandoning Article I constitutional duties through coordination with executive branch for shared political motivations, creating separation of powers crisis where congressional independence is subordinated to executive coordination.

## 2. Legal Impossibility of Criminal Associate Protection

172. Johnson's coordination with executive branch to abandon constitutional duties created protection for criminal associates that exists nowhere in American legal system for any person under any circumstances, violating constitutional requirements by establishing privileged class exempt from constitutional oversight that no American citizen has ever received under law regardless of status, wealth, fame, or claimed innocence.

173. No constitutional provision, federal statute, state law, legal precedent, court decision, or administrative regulation authorizes abandoning Article I constitutional duties for political motivations or creating government protection for criminal associates under any circumstances. Article I duties are non-discretionary constitutional obligations that cannot be suspended for criminal associate protection or wealthy individual comfort.

174. Johnson's protection of criminal associates violates equal protection because federal prosecutors routinely charge ordinary citizens under RICO with far less evidence of criminal association than exists between government officials and Epstein's criminal enterprise. Continued social association, financial benefit, and willful blindness to criminal activity constitute sufficient evidence for RICO prosecution of ordinary citizens, yet Johnson abandons constitutional duties to protect identical associations by wealthy

individuals, creating systematic privilege that inverts federal criminal law enforcement standards.

175. Under **18 U.S.C. § 1962(c) and (d)**, federal prosecutors routinely charge ordinary citizens with "knowing participation" in criminal enterprises based on: (1) social association with criminal operators; (2) financial benefit or mutual facilitation; (3) continued relationship after knowledge of criminal activity; and (4) "willful blindness" to ongoing criminal enterprise. Publicly documented Trump-Epstein evidence including decades of social association, shared transportation, business relationships, and continued contact after Epstein's 2008 conviction exceeds evidentiary standards under **18 U.S.C. § 1961** (enterprise definition) and *United States v. Turkette* "association-in-fact" requirements that federal prosecutors routinely use for RICO convictions of ordinary citizens.

176. Federal RICO prosecution of Texas millionaire Rex Cauble (1981) proves wealth provides no protection against criminal association charges. Despite character witnesses including President Carter's sister and Governor John Connally, prosecutors successfully convicted Cauble for employing suspected criminal Charles "Muscles" Foster, with $80 million asset forfeiture for continued relationship after suspicious activities. Johnson's protection of Epstein associates with identical evidence (continued association, employment relationships, property access) violates equal protection by providing governmental immunity that wealthy defendants in federal court never receive.

177. Boyle v. United States (2009) eliminated meaningful structure requirements for RICO enterprises, holding that "association-in-fact" requires only: purpose, relationships among associates, and sufficient longevity. No hierarchy, formal meetings, or

organizational structure required. Publicly documented Epstein relationships including decades of social association, shared transportation, business relationships, and documented contact spanning multiple years far exceed the "Night Drop Crew" evidence that Supreme Court found sufficient for RICO conviction, proving Johnson's constitutional duty abandonment protects criminal associations that routinely result in 20-year federal sentences for ordinary citizens.

178. Federal courts apply "willful blindness" doctrine where knowledge is inferred if defendants "deliberately closed their eyes to facts that otherwise would have been obvious" (Ninth Circuit Model Jury Instructions). Continued association after public awareness of criminal activity or suspicious behavior becomes proof of willful blindness under federal prosecution standards routinely applied to ordinary citizens. Johnson's protection of Epstein associates violates equal protection by providing governmental immunity from willful blindness standards that federal prosecutors routinely use to convict ordinary citizens for criminal association evidence, creating systematic privilege that ordinary defendants never receive regardless of wealth or political connection.

### 3. Two-Tiered Justice System Through Criminal Associate Protection

179. Systematic discrimination through criminal associate protection: a. Tier 1 (Ordinary Citizens like Plaintiff): Subject to full constitutional oversight and complete legal disclosure requirements with criminal penalties for concealment and mandatory reporting obligations that apply universally to all American citizens regardless of wealth or social connections b. Tier 2 (Wealthy Criminal Associates): Receive coordinated governmental protection through systematic abandonment of Article I constitutional duties, cross-branch intervention violating constitutional requirements, and systematic concealment

prohibited by constitutional governance principles specifically because of wealth and political connections

180. Johnson's coordination with executive branch to abandon constitutional duties represents government officials acting completely outside constitutional authority by subordinating constitutional obligations to criminal associate protection, violating fundamental constitutional hierarchy requiring child welfare supersede criminal associate comfort in all government actions.

### 4. Child Welfare vs. Criminal Associate Comfort Legal Analysis

181. The Constitution and all American law establish absolute hierarchy where child welfare protection supersedes any consideration for criminal associate comfort, wealthy individual privacy, or political convenience, making Johnson's criminal associate protection through constitutional duty abandonment a fundamental violation of legal hierarchy.

182. Johnson's justification for constitutional duty abandonment - protecting "innocent people" associated with criminal enterprises - inverts fundamental legal priority that child protection from sexual predators supersedes any protection for individuals associated with sexual predator networks. Standard redaction technology enables victim anonymization with perpetrator identification, proving Johnson deliberately chose criminal protection over technically feasible victim protection regardless of their claimed innocence or social status.

183. Johnson's coordination with executive branch creates systematic privilege for wealthy individuals associated with criminal enterprises that exists nowhere in American

legal system, violating equal protection by providing criminal associate protection that ordinary citizens would never receive under identical circumstances.

184. Johnson's constitutional duty abandonment to protect criminal associates represents complete inversion of American legal hierarchy where public safety, child welfare, and constitutional governance must supersede criminal associate comfort, wealthy individual privacy, and political expediency under all circumstances.

### 5. Systematic Constitutional Architecture Breakdown

185. Constitutional research documents systematic decline in legislative authorship transparency from 60-70% in 1789-1850 to 0% today. Modern Congress has replaced constitutional authorship (actual exercise of legislative powers requiring substantive knowledge and accountability) with procedural sponsorship (mere bill introduction providing plausible deniability for content ignorance). This substitution enables external control of legislative content while elected representatives serve as constitutional theater rather than constitutional actors, systematically violating Article I, Section 1's exclusive grant of "ALL legislative Powers" to Congress through constitutional duty evasion rather than constitutional duty fulfillment.

186. Johnson's coordination with Trump's systematic legislative authorship violates constitutional text where the President cannot constitutionally "present" legislation to himself for review, cannot genuinely "approve" legislation he authored, cannot use the constitutionally required 10-day consideration period for work he already completed, and cannot return legislation "with his Objections" to work he personally wrote. This constitutional text violation proves systematic constitutional fraud where constitutional process becomes meaningless theater rather than genuine separation of powers

compliance, demonstrating that Johnson's abandonment of Article I oversight duties serves to protect systematic constitutional violations across multiple constitutional domains rather than legitimate legislative discretion.

187. Trump's August 5, 2025 statement to CBS News claiming "we are entitled to five more seats" in Texas creates constitutional impossibility proving systematic executive usurpation of legislative representation violating Article I, Section 2 requirement that "Representatives shall be chosen by the People" rather than entitled to presidents. No constitutional provision grants presidents entitlement to congressional seats, making Trump's claim constitutional proof of criminal enterprise using systematic coordination to control legislative authorship (H.R. 1), legislative oversight (Johnson coordination), and legislative representation (congressional seat entitlement) through complete constitutional architecture replacement.

188. Trump's congressional seat entitlement claim violates constitutional text because constitutional analysis eliminates all legitimate explanations. No constitutional provision, no legal precedent, no democratic principle, and no separation of powers doctrine grants presidents entitlement to congressional seats based on electoral performance. This constitutional text violation combined with systematic coordination evidence across legislative authorship, oversight prevention, and representation control proves comprehensive criminal enterprise using governmental authority for systematic constitutional replacement rather than constitutional compliance.

189. CBS election law expert David Becker's analysis documented in Exhibit A-11 perfectly validates Plaintiff's constitutional framework by confirming that legislative representatives' job "is not really what their job is supposed to be" when serving

executive entitlement claims rather than constituent representation, emphasizing that "The United States House is supposed to be the people's house" rather than executive property. This independent expert validation proves systematic constitutional breakdown where executive coordination transforms legislative representation from democratic accountability to criminal enterprise coordination making citizens "pawns" in systematic constitutional usurpation.

190. Chief Judge James E. Boasberg's warning at the Judicial Conference that the Trump Administration would "disregard rulings of federal courts" and create "a constitutional crisis" received immediate validation through Attorney General Bondi's retaliatory ethics complaint targeting him specifically for these constitutional warnings. Constitutional analysis demonstrates that while Judge Boasberg's administrative warnings serve legitimate Article III functions protected by judicial independence, Bondi's public commentary defending Trump's record in ongoing federal cases violates Canon 3(A)(6) through improper political advocacy concerning federal judicial proceedings. This systematic executive intimidation of judicial constitutional enforcement proves the constitutional crisis Judge Boasberg identified, demonstrating coordinated governmental suppression of constitutional accountability across all three branches. The immediate retaliation against judicial constitutional warnings validates both the accuracy of constitutional crisis predictions and the systematic nature of cross-branch coordination to prevent constitutional enforcement through coordinated intimidation rather than constitutional compliance.

191. Johnson's coordination with executive branch to prevent oversight perpetuates this systematic constitutional architecture collapse by preventing discovery of external control

networks, compilation authority mechanisms, and cross-branch coordination that has replaced constitutional governance with shadow control.

### 6. Federal Transparency Law Circumvention

192. Johnson's coordination with executive branch enables systematic circumvention of FOIA requirements by using congressional coordination to prevent disclosure while claiming executive prerogatives, creating unauthorized exemptions not provided by federal transparency law as comprehensively proven through exhaustive exemption analysis in Appendix IV.

193. Johnson's cancellation of committee proceedings to avoid oversight violates statutory open meeting requirements while coordinating with executive preferences, using cross-branch coordination to circumvent federal transparency obligations.

194. Plaintiff has statutory rights under federal transparency laws to access government information that Johnson's executive coordination systematically denies, creating concrete statutory injury with clear judicial remedies and attorney's fees provisions.

### 7. Constitutional Crisis Through Cross-Branch Coordination

195. Johnson's deference to executive preferences abandons constitutional independence required by separation of powers, creating legislative subordination to executive preferences rather than co-equal branch authority.

196. The identical justifications between Trump and Johnson combined with Johnson's explicit executive deference proves systematic coordination across branches to prevent constitutional oversight, violating fundamental separation of powers requirements.

197. Johnson's coordination with executive branch inverts constitutional structure by making legislative oversight subordinate to executive preferences rather than maintaining independent congressional authority as constitutional check on executive power.

198. Johnson's conduct exemplifies documented systematic breakdown where all three branches coordinate to prevent constitutional enforcement: legislative abdication enables executive usurpation while judicial avoidance prevents constitutional accountability.

199. Johnson's systematic concealment of governmental processes through executive coordination perpetuates complete breakdown of constitutional architecture where external actors control governmental functions while elected representatives serve as coordination mechanisms rather than independent constitutional authorities.

### 8. Criminal Law Violations Through Constitutional Duty Abandonment

200. Johnson's systematic coordination with executive branch to abandon Article I constitutional duties for criminal associate protection violates multiple federal criminal statutes including: a. **18 U.S.C. § 3** - Accessory after the fact to federal sex trafficking crimes through coordinated political protection of sexual predator associates b. **18 U.S.C. § 1512** - Obstruction of congressional proceedings through systematic duty abandonment coordinated with executive branch preventing sexual predator network investigation c. **18 U.S.C. § 242** - Civil rights violations under color of federal law through discriminatory duty abandonment prioritizing criminal associates over child welfare d. **18 U.S.C. § 371** - Conspiracy to violate constitutional rights through coordinated cross-branch constitutional duty abandonment serving criminal rather than public interests

201. Johnson's coordination with executive branch officials including President Trump creates institutional criminal enterprise using government authority to abandon constitutional duties for coordinated protection of sexual predator networks and systematic obstruction of constitutional accountability required by Article I governance designed to protect child welfare.

### 9. Complete Oversight Destruction as Criminal Enterprise Evidence

202. Johnson's prevention of Epstein file oversight represents one component of systematic criminal enterprise involving complete congressional oversight destruction. Johnson systematically prevented all ethics investigations by deliberately refusing to appoint the Office of Congressional Conduct board for four months - the longest delay in the office's 17-year history - completely shutting down the independent congressional ethics watchdog during the period he simultaneously prevented Epstein file disclosure.

203. Johnson's systematic oversight destruction demonstrates coordinated criminal enterprise spanning multiple oversight mechanisms:

- Epstein file oversight prevention through procedural fraud and committee coordination
- Congressional ethics investigation prevention through deliberate board appointment sabotage shutting down all OCC investigations
- Ethics committee report suppression (Matt Gaetz case representing "no modern precedent" for Speaker interference)
- Complete accountability elimination through systematic destruction of all oversight mechanisms

Johnson's constitutional duty abandonment enables protection of systematic recruitment operations documented in Exhibit A-9, where Trump's recorded admissions prove decades-long patterns of targeting minors for employment based on appearance while maintaining consciousness this behavior represented his "form of

alcoholism." Johnson's prevention of constitutional oversight serves to protect documented systematic youth targeting that any constitutional investigation would expose, proving criminal protection motivation rather than legitimate victim protection concerns. This systematic criminal enterprise coordination proves criminal rather than political motivation for oversight destruction serving sexual predator network protection through coordinated governmental authority abuse.

204. Johnson's oversight destruction demonstrates criminal intent through unprecedented systematic design rather than administrative delay:

- 17-year unprecedented delay despite immediate appointment authority proving deliberate criminal obstruction
- Complete ethics watchdog shutdown preventing all congressional misconduct investigations during critical period
- Zero explanation provided to press inquiries demonstrating consciousness of criminal conduct
- Perfect coordination timing with executive branch inspector general firings (17 eliminated) proving systematic criminal enterprise coordination

205. Validation of systematic criminal enterprise operation appears in NBC News documentation from June 3, 2025, proving Trump administration has "dismantled key parts of law enforcement infrastructure, creating what experts say is the ripest environment for corruption by public officials and business executives in a generation." Documented destruction includes forcing out most lawyers from DOJ's Public Integrity Section (from 35 to 4-5 lawyers), disbanding "an FBI squad tasked with investigating congressional misconduct," and firing most inspectors general, creating perfect coordination with Johnson's systematic congressional oversight destruction. Paul Rosenzweig, George Washington University law professor and former Bush administration official, confirms systematic criminal enterprise: "He's dismantling not

just the means of prosecuting public corruption, but he's also dismantling all the means of oversight of public corruption. The law is only for his enemies now." This independent expert validation proves systematic rather than coincidental coordination across all governmental anti-corruption mechanisms during the exact period Johnson abandoned constitutional oversight duties, documented in Exhibit [NBC News Article].

206. Real-time validation of systematic anti-corruption infrastructure destruction occurred on July 2, 2025, when Plaintiff attempted to report federal criminal enterprise evidence through official FBI tip line procedures. Twelve separate FBI agents systematically refused to accept Plaintiff's federal crime reports, each employing identical scripted language stating "I do not consent to recording" before immediately terminating calls when Plaintiff asserted documentation rights. One agent terminated the call immediately upon hearing iPhone's automatic "this call is being recorded" notification before Plaintiff could speak, demonstrating systematic institutional obstruction of citizen crime reporting rather than individual agent discretion. The systematic coordination across multiple agents using identical responses proves organizational training to prevent documented federal crime reporting during the exact period of systematic anti-corruption destruction documented by NBC News, eliminating citizen access to federal law enforcement reporting mechanisms while Johnson simultaneously eliminated congressional oversight mechanisms. These contemporaneous recordings documented in Exhibit C-3 provide perfect real-time evidence that systematic criminal enterprise has captured all accountability mechanisms: congressional oversight (Johnson), federal prosecutors (Blanche capture), inspectors general (17 fired), DOJ anti-corruption units (35→5 lawyers), FBI congressional misconduct squad (disbanded), and citizen crime

reporting (systematically obstructed), proving complete elimination of all possible recourse channels through coordinated criminal enterprise operation.

207. The systematic elimination of all normal democratic accountability mechanisms creates constitutional necessity for federal judicial intervention because no alternative recourse remains for citizens to address systematic governmental criminal enterprise. When FBI tip line obstruction prevents citizen crime reporting, congressional oversight abdication prevents legislative accountability, inspector general elimination prevents executive accountability, prosecutorial capture prevents criminal accountability, and congressional ethics destruction prevents internal accountability, federal court intervention becomes constitutionally mandatory rather than discretionary to prevent complete constitutional nullification. Standing doctrine cannot render constitutional violations non-justiciable when government has systematically eliminated every other constitutional remedy, requiring citizen access to federal courts as the final constitutional safeguard against systematic governmental criminal enterprise that has captured all other accountability mechanisms through coordinated institutional destruction.

208. Johnson's coordination represents documented participation in institutional DARVO methodology (¶126), revealing criminal enterprise protecting criminal networks through systematic oversight elimination rather than case-by-case obstruction. This systematic methodology coordination across legislative (Johnson) and executive (¶167) branches proves criminal rather than political motivation for comprehensive oversight destruction serving sexual predator network protection through coordinated governmental authority abuse.

## 10. Federal Criminal Statute Violations

209. Johnson's systematic coordination with executive branch to abandon constitutional duties violates **18 U.S.C. § 241**, which criminalizes conspiracy "to injure, oppress, threaten, or intimidate any person...in the free exercise or enjoyment of any right or privilege secured to him by the Constitution." Johnson's cross-branch coordination systematically injures Plaintiff's constitutional rights to separation of powers, democratic representation, and constitutional governance through coordinated abandonment of Article I duties. The combination of Trump's recorded admissions of systematic youth targeting documented in Exhibit A-9, consciousness of inappropriate behavior through addiction metaphors, and Johnson's coordinated constitutional duty abandonment meets federal criminal evidence standards by providing direct evidence of criminal motivation, systematic behavioral patterns spanning decades, and coordinated governmental authority abuse serving criminal enterprise protection rather than constitutional compliance. This systematic coordination proves conspiracy to violate constitutional rights through governmental authority abuse protecting documented criminal recruitment operations rather than serving legitimate constitutional purposes.

210. Johnson's coordination constitutes conspiracy under **18 U.S.C. § 371** "to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose." Johnson's systematic coordination with executive branch to abandon constitutional duties defrauds the United States of honest services and constitutional compliance required by Article I governance, using government authority for criminal associate protection rather than constitutional obligations.

211. Johnson's prevention of congressional oversight violates **18 U.S.C. § 1512(c)(2)** by "otherwise obstructing, influencing, or impeding any official proceeding" through systematic coordination to prevent constitutional accountability. Congressional oversight proceedings constitute "official proceedings" under federal law, and Johnson's coordination with executive branch to prevent such proceedings violates federal obstruction statutes designed to protect congressional independence and oversight functions.

212. *Monroe v. Pape*, 365 U.S. 167 (1961), established broad interpretation of "under color of law" for **§ 1983** liability, while *Scheuer v. Rhodes*, 416 U.S. 232 (1974), confirmed individual capacity liability for constitutional violations with limited qualified immunity for clearly established violations. Johnson's systematic constitutional violations exceed any qualified immunity protection due to clearly established nature of Article I duties and separation of powers requirements.

213. Johnson's conduct presents justiciable criminal conspiracy rather than non-justiciable political questions because: (a) courts routinely adjudicate criminal conspiracy regardless of governmental context; (b) constitutional impossibility of preventing voting while Republicans control outcome creates clear judicial standards proving criminal rather than political motivation; (c) constitutional duties are legal obligations rather than political discretion; and (d) systematic criminal enterprise coordination transcends political question protection under *Baker v. Carr*, 369 U.S. 186 (1962).

214. Johnson cannot claim legislative immunity under Article I, Section 6 because: (a) preventing legislative voting is not protected "Speech or Debate in either House" but abandonment of legislative function; (b) criminal conspiracy exceeds protected

legislative activity; (c) cross-branch executive coordination operates outside protected legislative sphere; and (d) systematic constitutional duty abandonment for criminal associate protection serves non-legislative purposes eliminating Speech or Debate protection under *United States v. Brewster*, 408 U.S. 501 (1972).

### 11. Systematic Denial of Representation Through Democratic Process Destruction

215. When citizens elect representatives under Article I, Section 2 ("Representatives chosen by the People"), they enter into constitutional contract where citizens grant legislative authority to representatives who agree to exercise that authority on behalf of constituents through functional legislative process serving democratic accountability and constitutional governance.

216. Johnson systematically breached the constitutional representation contract by preventing elected representatives from exercising the legislative authority citizens granted them, rendering meaningless the people's electoral choices and violating the fundamental constitutional principle that representatives chosen by the people will perform legislative duties on their behalf.

217. Johnson's prevention of legislative function violates Article I, Section 2 by nullifying the people's choice of representatives, preventing representatives from performing the duties they were elected to perform, destroying the purpose for which citizens chose their representatives, and violating popular sovereignty by making citizen electoral choices ineffective through systematic procedural manipulation.

218. Johnson's prevention of legislative process creates unequal representation violating the Fourteenth Amendment by denying some citizens effective representation while

others receive it, creating arbitrary distinctions based on political convenience rather than constitutional principle, violating equal treatment under democratic process, and discriminating against citizens whose representatives seek to perform constitutional legislative duties.

219. Johnson's conduct violates voting rights by making votes meaningless when representatives cannot perform legislative duties, denying practical effect of citizen electoral choices, violating voting rights through representative process destruction, and creating representational disenfranchisement through procedural manipulation that renders constitutional electoral participation ineffective.

220. Johnson systematically destroyed democratic process by: (1) preventing representatives from exercising authority citizens granted them through electoral process; (2) destroying legislative process through procedural manipulation preventing constitutional function; (3) eliminating democratic accountability by preventing recorded votes on constitutional oversight; and (4) violating popular sovereignty by making citizen electoral choices meaningless through governmental action preventing representative function.

221. Johnson's conduct creates constitutional emergency requiring immediate judicial intervention because representation rights are being systematically violated, democratic process is being destroyed through governmental action, constitutional structure is collapsing through procedural manipulation, and popular sovereignty is under attack through systematic representation denial that makes constitutional electoral participation meaningless.

222. Bondi's ethics complaint violates **Model Rules 3.4(f)** and **8.4(c)** by prosecuting others for violations she commits herself, creating systematic administrative retaliation that uses prosecutorial authority to silence constitutional warnings while committing identical ethical violations through political commentary on ongoing federal cases.

223. Bondi's systematic retaliation violates **18 U.S.C. § 1512(b)** by using prosecutorial authority to intimidate Judge Boasberg and prevent constitutional crisis coordination among federal judges, while violating **18 U.S.C. § 242** through deprivation of judicial constitutional rights under color of prosecutorial law.

## V. CAUSES OF ACTION

### COUNT I: ARTICLE I & SEPARATION OF POWERS VIOLATIONS (42 U.S.C. § 1983)

224. Plaintiff incorporates by reference all preceding paragraphs.

225. Article I, Section 1 establishes that "ALL legislative Powers herein granted shall be vested in a Congress" as the foundation for all congressional authority, while Article I, Section 5 grants specific authority for House proceedings, creating mandatory constitutional duties requiring congressional independence from executive coordination. The Constitution establishes Congress as co-equal branch with independent oversight authority that cannot be subordinated to executive preferences or coordinated with executive branch for shared political objectives.

226. Johnson systematically abandoned Article I constitutional duties through: (a) recorded executive coordination admission (¶1) demonstrating subordination of legislative independence to executive preferences; (b) vote prevention despite 9-4

Republican supermajority control (¶1) constituting systematic destruction of democratic process through procedural fraud; (c) coordination with executive branch using identical protective rationales as Trump administration; and (d) unilateral surrender of congressional oversight powers that belong to entire Congress under Article I, Section 1.

227. Johnson's vote prevention despite Republican supermajority control creates constitutional impossibility because no legitimate governmental purpose could justify preventing democratic resolution when Republicans control the outcome, proving criminal rather than political motivation through systematic avoidance of democratic accountability that any vote would resolve in Republicans' favor.

228. Johnson's systematic coordination with executive branch violates separation of powers by abandoning legislative independence required by constitutional structure, enabling executive control over legislative processes, and subordinating Article I duties to cross-branch political coordination rather than maintaining congressional independence as constitutional check on executive power.

229. Johnson's violations of foundational constitutional provisions through cross-branch coordination invalidate the constitutional basis for derivative statutory authority, demonstrating systematic subordination of constitutional hierarchy to cross-branch political advantage and violating the fundamental principle that constitutional compliance is prerequisite to statutory authority.

230. Defendant Bondi's systematic coordination with Johnson violates separation of powers through cross-branch professional capture methodology where both legal professionals abandoned correct constitutional and legal standards they previously articulated to enable systematic criminal associate protection. Bondi's November 22,

2024 statement correctly establishing that criminal associates "have no legal basis" for name protection unless they are "a child, a victim, or a cooperating defendant" followed by systematic post-appointment reversal coordinates perfectly with Johnson's identical constitutional expertise abandonment, proving systematic professional fraud across separation of powers boundaries rather than legitimate legal evolution. Bondi's retaliatory ethics complaints against Judge Boasberg for constitutional crisis warnings while herself violating Canon 3(A)(6) demonstrates systematic suppression of constitutional accountability coordinated with Johnson's oversight destruction, violating Article III judicial independence and enabling continued constitutional breakdown.

231. Johnson's specific coordination with executive branch to abandon Article I duties directly causes Plaintiff's ongoing constitutional governance injuries through systematic invalidation of constitutional independence and separation of powers, creating government operating through cross-branch coordination rather than constitutional limits. Denying standing for Article I, Section 1 challenges violates Article III by rendering foundational constitutional text non-justiciable, as no other entity possesses constitutional authority to challenge legislative abandonment of exclusive legislative power granted by constitutional text.

232. Johnson cannot claim qualified immunity because Article I constitutional duties and separation of powers requirements represent clearly established law since 1789, and systematic cross-branch coordination to abandon constitutional duties while preventing democratic voting despite supermajority control violates obviously established constitutional principles that any reasonable government official would recognize as unlawful abandonment of legislative independence for criminal associate protection.

### COUNT II: EQUAL PROTECTION & DUE PROCESS VIOLATIONS (42 U.S.C. § 1983)

233. Plaintiff incorporates by reference all preceding paragraphs.

234. The Equal Protection Clause of the Fourteenth Amendment prohibits government from denying any person equal protection of the laws and requires that similarly situated individuals be treated similarly under identical circumstances. The Due Process Clause prohibits government from depriving persons of constitutional rights without due process of law and requires that government action serve legitimate purposes through constitutional means rather than arbitrary coordination lacking constitutional process.

235. Johnson's conduct creates unprecedented equal protection violation through systematic constitutional enforcement discrimination where: (a) Texas Democrats following 150+ years of established constitutional precedent while maintaining Article I independence face immediate civil arrest warrants and $500 daily fines for constitutional procedure usage serving constituent interests; while (b) Johnson violating unprecedented constitutional procedure through executive coordination that abandons Article I duties receives governmental protection and zero enforcement action for constitutional violations serving criminal associate protection.

236. Johnson's constitutional duty abandonment creates systematic privilege violating Equal Protection Clause as documented in Appendix I where: (a) Ordinary Citizens face RICO prosecution under *United States v. Turkette* "liberal construction" mandate for minimal association evidence including social photographs, business relationships, and continued contact after criminal convictions, with 20-year sentences and asset forfeiture; while (b) Epstein Associates receive coordinated governmental protection through constitutional duty abandonment despite identical evidence types that routinely convict

ordinary Americans, including decades of documented association, private jet flights, business relationships, and continued contact after 2008 conviction, creating systematic privilege that exceeds any immunity in American legal history.

237. The identical evidence types that convict ordinary Americans under RICO—social association, continued relationship after criminal activity, willful blindness to ongoing criminal enterprise—exist in abundance regarding Epstein relationships yet remain unprosecuted due to political connection rather than evidence insufficiency, creating systematic privilege that violates equal protection more fundamentally than racial or religious discrimination. *Armstrong* barriers prevent ordinary citizens from challenging this systematic protection while Johnson's constitutional duty abandonment provides de facto prosecutorial immunity that violates fundamental equal protection principles.

238. This enforcement asymmetry violates Equal Protection Clause by creating systematic discrimination where constitutional compliance is punished while constitutional violations are protected based solely on whether conduct maintains or abandons Article I independence. No equal protection precedent permits governmental discrimination favoring constitutional violations over constitutional compliance through enforcement inversion that rewards executive coordination while punishing legislative independence.

239. Johnson's coordination with executive branch to abandon constitutional duties violates both substantive and procedural due process by: (a) acting outside constitutional authority and subordinating constitutional obligations to cross-branch political preferences without legitimate government purpose; (b) providing no constitutional process for decisions about abandoning Article I constitutional duties; and (c) making

arbitrary coordination determinations without procedural safeguards required when government abandons constitutional duties affecting citizens' legitimate interests in constitutional governance.

240. Defendant Bondi's systematic abandonment of legal standards she demonstrably understood creates due process violations through arbitrary and discriminatory application of correct legal analysis based on political coordination rather than legal principles. Bondi's professional competence demonstration followed by conscious abandonment after Trump appointment violates equal protection by providing criminal associates discriminatory legal protection through systematic reversal of her own correct analysis, creating two-tiered legal system where identical legal frameworks receive different applications based on political rather than legal considerations documented in Exhibits A-12 and A-17. Bondi's retaliatory prosecution of Judge Boasberg for ethical conduct she herself violates proves systematic discrimination where constitutional compliance receives punishment while constitutional violations receive protection.

241. Plaintiff suffers systematic constitutional injury from unequal treatment under law where powerful figures receive coordinated governmental protection through cross-branch constitutional duty abandonment while ordinary citizens face full constitutional compliance requirements, creating systematic discrimination and arbitrary government action that violates fundamental equal protection and due process principles.

242. Johnson cannot claim qualified immunity because equal protection and due process requirements represent clearly established law since the Fourteenth Amendment's ratification, and systematic discrimination favoring constitutional violations over constitutional compliance through arbitrary cross-branch coordination violates obviously

established constitutional principles that any reasonable government official would recognize as unlawful governmental discrimination.

## COUNT III: FEDERAL TRANSPARENCY LAW VIOLATIONS (5 U.S.C. §§ 552, 552b)

243. Plaintiff incorporates by reference all preceding paragraphs.

244. Under the Freedom of Information Act (**5 U.S.C. § 552(a)(3)**), government agencies must make records promptly available to any person upon request unless specifically exempted by the nine narrow exemptions in **5 U.S.C. § 552(b)**. Under the Congressional Sunshine Act (**5 U.S.C. § 552b**), congressional committee proceedings must be open to public unless specifically exempted. Both statutes create individual statutory rights with clear judicial remedies and attorney's fees provisions.

245. Johnson violated federal transparency requirements by: (a) coordinating with executive branch to prevent Epstein file disclosure despite mandatory FOIA obligations; (b) canceling Rules Committee meetings to prevent oversight, violating Congressional Sunshine Act open meeting requirements; and (c) accepting executive branch "credible evidence" filtering that creates unauthorized exemptions not provided by federal transparency law.

246. Johnson's coordination rationales accepting executive "credible evidence" filtering violate FOIA disclosure requirements because no FOIA exemption authorizes executive branch credibility gatekeeping over authentic government documents. The nine specific FOIA exemptions provide narrow grounds for withholding authentic documents, but contain no "executive credibility assessment" exemption permitting executive branch filtering through credibility determinations. Johnson's acceptance creates unauthorized

FOIA exemption enabling executive branch to withhold authentic documents through invented authority that appears nowhere in statutory framework, serving criminal associate protection through systematic circumvention of mandatory disclosure requirements as demonstrated through comprehensive FOIA exemption analysis in Appendix IV.

247. Johnson's cross-branch coordination enables systematic circumvention of both FOIA and Congressional Sunshine Act requirements by using executive coordination to prevent disclosure while claiming unauthorized exemptions documented in Appendix IV, canceling committee proceedings to avoid statutory transparency obligations, and coordinating with executive preferences to prevent statutory compliance rather than facilitating citizen access to government information as required by federal law.

248. Plaintiff has concrete statutory rights under both FOIA and Congressional Sunshine Act that Johnson's coordination systematically denies: (a) FOIA rights to access government records including Epstein files and congressional oversight materials documented in Exhibits I-1, C-2; and (b) Congressional Sunshine Act rights to open committee proceedings that Johnson systematically prevents through committee cancellation and oversight prevention, creating concrete statutory injury with clear judicial remedies independent of constitutional theory validated through exhaustive statutory analysis in Appendix IV.

249. Congress enacted FOIA with "general philosophy of full agency disclosure" and passed the Government in the Sunshine Act with overwhelming Congressional support (Senate 94-0, House 390-5) based on the principle that "the public is entitled to the fullest practicable information regarding the decision-making processes of the Federal

Government." Johnson's coordination rationales ("political games," "protect innocent people") appear nowhere in statutory exemptions and violate Congressional intent that transparency requirements cannot be circumvented through cross-branch coordination to avoid statutory disclosure duties.

250. Federal transparency law violations create individual standing with concrete remedies including mandatory disclosure, injunctive relief, and attorney's fees under **5 U.S.C. § 552(a)(4)(E)** and **5 U.S.C. § 552b**, providing clear judicial remedies for Johnson's systematic circumvention of federal transparency obligations through unauthorized cross-branch coordination serving criminal associate protection rather than statutory compliance.

### COUNT IV: CIVIL RIGHTS CONSPIRACY & REPRESENTATION DENIAL (42 U.S.C. §§ 1983, 1985)

251. Plaintiff incorporates by reference all preceding paragraphs.

252. The First Amendment protects citizens' right to receive information from government sources necessary for democratic accountability and informed voting. Citizens possess fundamental constitutional right under Article I, Section 2 to effective representation through elected representatives who exercise legislative authority on their behalf through functional democratic process. Two or more persons acting in concert to deprive individuals of these constitutional rights violate **42 U.S.C. §§ 1983 and 1985** when such conspiracy involves government action affecting citizens' constitutional interests.

253. Johnson conspired with executive branch officials including President Trump, Transportation Secretary Sean Duffy, House leadership, and other government officials to

systematically abandon Article I constitutional duties through coordinated cross-branch action. Johnson and executive branch shared common understanding to coordinate constitutional duty abandonment using identical protective rationales and systematic cross-branch cooperation to prevent constitutional oversight while maintaining shared political objectives serving criminal associate protection rather than constitutional governance. Johnson's impossibility of legitimate defense through 100% false technical claims combined with logical contradiction coordination proves systematic criminal enterprise using professional fraud and constitutional authority abandonment. Johnson's three fabricated legal objections (wrong CSAM statutes, grand jury requirements, inadequate protections) create statistical impossibility of accidental error requiring conscious criminal deception. Johnson's coordination with Trump despite opposing factual assessments creates constitutional impossibility of legitimate governmental cooperation, proving coordination serves criminal enterprise protection through systematic authority abandonment rather than constitutional compliance.

254. Johnson's coordination with Trump despite Trump's August 7, 2025 explicit declaration that "the whole thing is a hoax...total bullshit" documented in Exhibit A-16 while Johnson maintains crimes are real creates an impossibility of legitimate constitutional coordination. Vice President Vance's July 28, 2025 deployment of identical linguistic coordination frameworks ("credible information" filtering, systematic deflection) documented in Exhibit A-15 proves systematic criminal enterprise coordination across the highest levels of executive authority. Johnson's impossibility of legitimate defense through 100% false technical claims combined with logical

contradiction coordination with factual deniers proves systematic criminal enterprise using professional fraud and constitutional authority abandonment.

255. Defendants performed specific overt acts proving criminal conspiracy including: (a) coordinated linguistic manipulation where Johnson and Trump deployed identical protective language expanding victim classifications to include criminal associates documented in Exhibit D-1; (b) cabinet-level coordination where Transportation Secretary Duffy used Johnson's exact deflection framework during July 16, 2025 congressional testimony documented in Exhibit A-18; (c) systematic oversight prevention through coordinated procedural fraud preventing democratic voting despite Republican supermajority control; and (d) coordinated constitutional duty abandonment serving criminal enterprise protection through cross-branch cooperation.

256. Johnson's coordination represents documented participation in "institutional DARVO," a systematic criminal methodology where institutions weaponize victim protection rhetoric to protect perpetrator networks. Exhibit D-1 contains peer-reviewed research by Harsey & Freyd (2020) showing 72% of perpetrators use DARVO tactics when confronted, with Johnson's linguistic manipulation mirroring nearly identical justifications used across Catholic Church dioceses, Penn State, USA Gymnastics, and BBC scandals, proving systematic rather than coincidental criminal enterprise methodology using coordinated suppression tactics across multiple officials.

257. Johnson systematically denied Plaintiff's constitutional right to effective representation by: (a) preventing elected representatives from exercising legislative authority citizens granted them through electoral process; (b) destroying legislative process through procedural fraud preventing constitutional oversight function despite 9-4

Republican supermajority control; (c) eliminating democratic accountability by preventing recorded votes that enable citizen evaluation of representative performance; and (d) violating popular sovereignty by making citizen electoral choices meaningless through systematic representative process destruction coordinated with executive branch.

258. Johnson's cross-branch conspiracy violates Plaintiff's First Amendment right to receive information necessary for informed democratic participation by preventing constitutionally required oversight through coordinated constitutional duty abandonment, systematically concealing governmental process information, and coordinating with executive branch to abandon Article I oversight duties that provide citizens access to government accountability information protected by First Amendment transparency rights.

259. Johnson's systematic coordination proves criminal motivation for conspiracy rather than legitimate political disagreement through: (a) enforcement asymmetry evidence proving systematic criminal enterprise using governmental authority to invert constitutional enforcement; (b) constitutional impossibility of preventing voting while controlling outcome proving criminal intent; (c) coordinated linguistic manipulation using documented criminal methodology; and (d) systematic criminal associate protection transcending normal political corruption into coordinated constitutional breakdown serving criminal enterprise operation.

260. Plaintiff suffers constitutional injury from systematic conspiracy denying constitutional rights to effective representation, government information access, and constitutional governance, while enabling cross-branch criminal coordination that destroys democratic process and prevents constitutional accountability through

coordinated abandonment of Article I duties serving criminal enterprise protection rather than constitutional compliance.

261. Johnson cannot claim qualified immunity because constitutional prohibitions on governmental conspiracy to deny civil rights, rights to effective representation, and First Amendment information access represent clearly established law, and systematic cross-branch coordination using documented criminal methodology to abandon constitutional duties for criminal associate protection violates obviously established civil rights protections that any reasonable government official would recognize as unlawful governmental conspiracy.

## COUNT V: PROSECUTORIAL CAPTURE & DUE PROCESS VIOLATIONS
### (42 U.S.C. § 1983)

262. Plaintiff incorporates by reference all preceding paragraphs.

263. In *Young v. United States ex rel. Vuitton*, 481 U.S. 787 (1987), the Supreme Court held that "a prosecutor may not have any interest, financial or otherwise, that might compromise the disinterested pursuit of justice," establishing absolute constitutional requirement for prosecutorial neutrality. *Marshall v. Jerrico*, 446 U.S. 238 (1980), reinforced that due process requires "a neutral and detached judge" because "[a] fair trial in a fair tribunal is a basic requirement of due process," with identical principles applying to prosecutorial decision-makers affecting individual constitutional rights.

264. Deputy Attorney General Todd Blanche's grant of immunity to Ghislaine Maxwell while maintaining complete financial dependency on Trump violates Supreme Court precedent by creating direct financial interest in protecting the subject of investigation rather than pursuing disinterested justice. Blanche's DOJ salary ($180,000+), career

advancement, and professional reputation depend entirely on Trump's favor, while Trump retains authority to terminate his employment, creating systematic financial interest in outcome that Supreme Court precedent absolutely prohibits.

265. Concurrent with Johnson's constitutional duty abandonment, Blanche granted limited immunity to Maxwell for testimony about "maybe 100 different people" while Trump publicly considered Maxwell's pardon as documented in Exhibits B-6 and A-10, proving systematic criminal protection enterprise coordinated across legislative and executive branches. Blanche's immunity decisions serve appointing authority protection rather than public accountability, violating constitutional due process requirements for neutral decision-makers in criminal proceedings affecting government officials.

266. Any legal authority the government claims to justify Blanche's prosecutorial role necessarily fails constitutional scrutiny because *Young v. United States ex rel. Vuitton* establishes absolute prohibition that no prosecutor may have "any interest, financial or otherwise, that might compromise the disinterested pursuit of justice." Potential justifications including DOJ conflict waivers, succession statutes, classified directives, or internal ethics approvals all violate Supreme Court constitutional requirements because no regulatory, statutory, executive, or administrative authority can override constitutional due process for neutral prosecutors.

267. Nixon's firing of prosecutors investigating him created obvious constitutional crisis, but Trump's appointment of prosecutors investigating him creates hidden constitutional crisis that appears legitimate while being systematically corrupt. Blanche's situation transcends the Saturday Night Massacre because it maintains facade of proper legal process while ensuring prosecutorial decisions serve the appointing authority rather than

public interest, proving systematic capture of justice system through appointment power rather than obvious obstruction through firing power.

268. Plaintiff suffers constitutional injury from systematic prosecutorial capture that prevents objective criminal accountability for government officials, creating two-tiered justice system where politically connected individuals receive protection through captured prosecutors while ordinary citizens face full prosecutorial authority. This systematic elimination of prosecutorial neutrality violates Plaintiff's due process rights to equal justice under law and government operating within constitutional constraints rather than through criminal enterprise coordination.

269. Defendant Bondi's systematic abuse of prosecutorial authority violates due process through retaliatory enforcement serving political rather than legal purposes. Bondi's ethics complaints against Chief Judge Boasberg for warning of constitutional crisis while herself violating Canon 3(A)(6) through public commentary on ongoing federal cases demonstrates systematic prosecutorial capture where prosecutorial authority serves political retaliation rather than legal compliance. Bondi's systematic reversal of her own correct legal analysis after Trump appointment combined with retaliatory enforcement against constitutional accountability warnings proves systematic abandonment of prosecutorial neutrality required by constitutional due process, creating prosecutorial decisions serving appointing authority rather than public interest in violation of constitutional requirements for neutral decision-makers documented in Exhibits A-12 and A-17.

270. Trump's August 5, 2025 extensive praise of Blanche regarding Maxwell coordination documented in Exhibit A-10 provides contemporary validation of

systematic prosecutorial capture where the subject of investigation defends prosecutorial decisions affecting his own criminal exposure while maintaining facade of neutrality, proving systematic rather than coincidental coordination between investigation targets and their prosecutors.

271. Johnson cannot claim qualified immunity because Supreme Court precedent requiring neutral prosecutors represents clearly established law since *Young v. Vuitton* (1987), and coordination with systematically captured prosecutors to abandon constitutional duties violates obviously established due process protections that any reasonable government official would recognize. Systematic prosecutorial capture enabling criminal associate protection through government authority violates constitutional requirements established by decades of Supreme Court precedent requiring prosecutorial independence from subjects of investigation.


## VI. DAMAGES AND ONGOING HARM

### A. Article I & Separation of Powers Harm (Count I)

272. Plaintiff suffers concrete constitutional harm from Johnson's systematic cross-branch coordination to abandon Article I constitutional duties, destroying congressional independence and creating government operating through executive coordination rather than separation of powers. Johnson's recorded executive coordination admission documented in Exhibit A-4 ("I agree with President Trump, with the Department of Justice, with the FBI") directly causes ongoing separation of powers violations affecting Plaintiff's fundamental right to constitutional governance within established constitutional limits.

273. Plaintiff suffers procedural harm from Johnson's vote prevention despite 9-4 Republican supermajority control proving criminal intent because: (1) any vote would have been won by Republicans 9-4 or greater; (2) avoiding voting proves consciousness of wrongdoing rather than legitimate disagreement; (3) no procedural justification exists for preventing democratic resolution when controlling the outcome; and (4) complete avoidance of democratic accountability serves criminal protection rather than constitutional governance, creating constitutional impossibility of legitimate defense.

274. Plaintiff suffers harm from Johnson's representation as a "litigator" and "constitutional law attorney" while claiming ignorance of evidence that any competent attorney would recognize as meeting federal RICO prosecution standards. Johnson's claimed ignorance of publicly documented Trump-Epstein evidence (photographs, flight logs, business relationships, continued association after 2008 conviction) violates **Model Rule 1.1** professional competence requirements, proving willful constitutional violations rather than legitimate professional limitations and demonstrating systematic fraud designed to enable constitutional duty abandonment while maintaining legal credibility.

275. Johnson's ongoing cross-branch coordination progressively corrupts constitutional institutions, causing exponentially increasing harm through systematic replacement of constitutional governance with coordinated political control that cannot be remedied through monetary damages alone, requiring immediate restoration of congressional independence and Article I compliance.

### B. Equal Protection & Due Process Harm (Count II)

276. Plaintiff suffers unprecedented equal protection injury through enforcement asymmetry where Texas Democrats face immediate civil arrest warrants and $500 daily

fines for constitutional compliance while Johnson receives governmental protection for constitutional violations. This systematic inversion punishing constitutional compliance while protecting constitutional violations proves active governmental corruption requiring immediate judicial restoration of constitutional enforcement hierarchy.

277. Plaintiff suffers constitutional injury from systematic creation of criminal law privilege that ordinary citizens never receive. Federal RICO prosecutions demonstrate minimal association evidence routinely produces 20-year sentences and asset forfeiture for ordinary citizens, while Johnson's constitutional duty abandonment provides coordinated governmental immunity for identical evidence concerning Epstein associates, creating systematic privilege that inverts federal criminal law and violates fundamental equal protection principles. *United States v. Armstrong* barriers prevent ordinary citizens from challenging this systematic protection while Johnson's coordination provides de facto prosecutorial immunity.

278. Plaintiff suffers concrete procedural injury from Johnson's systematic procedural fraud preventing required voting on constitutional oversight despite Republican supermajority control, violating democratic representation rights and rendering electoral participation meaningless through governmental destruction of representative process that cannot be retroactively remedied.

### C. Federal Transparency Law Harm (Count III)

279. Plaintiff suffers concrete statutory injury from Johnson's violations of FOIA disclosure requirements and Congressional Sunshine Act obligations through coordination with executive branch to prevent transparency, denying Plaintiff's individual statutory rights to government information with clear judicial remedies and attorney's

fees provisions under 5 U.S.C. §§ 552(a)(4)(E) and 552b as systematically validated in Appendix IV documented in Exhibits I-1, C-2.

280. Plaintiff suffers ongoing harm from Johnson's coordination with executive branch to create unauthorized FOIA exemptions through invented "executive credibility gatekeeping" authority appearing nowhere in the nine specific statutory exemptions under 5 U.S.C. § 552(b) as comprehensively proven in Appendix IV. This systematic circumvention enables criminal associate protection through executive filtering of authentic government documents that prevents congressional independent assessment of accountability evidence.

281. Plaintiff suffers harm from systematic concealment of governmental processes preventing time-sensitive constitutional amendment development that cannot be recovered once constitutional crisis progresses beyond democratic remedy, violating Article V and First Amendment rights to informed democratic participation in constitutional governance affected by Johnson's cross-branch coordination to prevent governmental transparency.

### D. Civil Rights Conspiracy & Representation Denial Harm (Count IV)

282. Plaintiff suffers harm from documented cross-branch criminal conspiracy where Johnson coordinates with Transportation Secretary Duffy, Trump administration, and other officials to abandon constitutional duties through identical linguistic manipulation frameworks. Academic research documented in Exhibit D-1 by Harsey & Freyd (2020) proves 72% of perpetrators use coordinated DARVO tactics, with Johnson's methodology mirroring nearly identical justifications used across Catholic Church dioceses, Penn State,

and USA Gymnastics scandals, demonstrating systematic rather than coincidental criminal enterprise methodology affecting Plaintiff's constitutional governance rights.

283. Plaintiff suffers harm from Transportation Secretary Sean Duffy's July 16, 2025 congressional testimony under oath using Johnson's identical fraudulent terminology expansion while claiming jurisdictional ignorance about transportation-related criminal evidence. Duffy's testimony creates potential perjury liability under **18 U.S.C. § 1621** for systematic linguistic manipulation under oath, proving consciousness of wrongdoing in coordinated criminal enterprise where professional Transportation Secretary demonstrates coordinated deception rather than legitimate professional limitation, violating federal perjury statutes through false testimony serving criminal associate protection.

284. Plaintiff suffers harm from Duffy's extraordinarily specific hypothetical about "Epstein Island flights followed by Bahamas sailing" documented in Exhibits A-18, revealing inside knowledge of actual criminal associate travel patterns rather than general protective concern. This specific scenario knowledge proves the coordinated linguistic manipulation serves protection of documented criminals with known travel to crime locations rather than hypothetical victim protection, creating obstruction of justice through coordinated false testimony designed to prevent accountability for specific criminal associates with documented evidence meeting federal prosecution standards.

285. Plaintiff suffers concrete harm from Johnson's systematic obstruction enterprise including: (a) 4,000 corruption complaint investigations prevented through deliberate Office of Congressional Conduct board appointment sabotage—the longest 4-month delay in the office's 17-year history; (b) complete ethics investigation processes

systematically disabled during critical period of criminal associate protection; and (c) perfect coordination timing with executive branch inspector general firings (17 eliminated), proving systematic criminal enterprise coordination across all branches affecting Plaintiff's constitutional accountability rights.

286. Plaintiff suffers concrete harm from Johnson's systematic fraud through concealment that DOJ July 7, 2025 memo documented in Exhibit B-6 proved completion of exhaustive review processing over 300 gigabytes, 10,000+ videos/images, and 40+ computers, with all victim protection work Johnson claimed to require already completed before his constitutional duty abandonment. Johnson's coordination with Trump administration systematically concealed this completed work to create false justifications, proving every technical barrier Johnson claimed was demonstrably eliminated, making his constitutional violations conscious criminal conspiracy rather than legitimate protective concerns.

287. Plaintiff suffers harm from Johnson's systematic breach of constitutional representation contract by preventing elected representatives from exercising legislative authority citizens granted them, nullifying popular sovereignty and violating Article I, Section 2 by making citizen electoral choices ineffective through systematic procedural manipulation that destroys the fundamental principle that "Representatives shall be chosen by the People."

### E. Prosecutorial Capture & Due Process Harm (Count V)

288. Plaintiff suffers due process injury from systematic prosecutorial capture where Deputy Attorney General Todd Blanche's complete financial dependency on Trump ($180,000+ salary, career advancement, professional reputation) while making immunity

decisions affecting former client violates *Young v. United States ex rel. Vuitton* absolute prohibition that "a prosecutor may not have any interest, financial or otherwise, that might compromise the disinterested pursuit of justice," creating two-tiered justice system where politically connected individuals receive protection through captured prosecutors.

289. Plaintiff suffers ongoing harm from coordinated criminal protection enterprise where Blanche granted limited immunity to Ghislaine Maxwell for testimony about "maybe 100 different people" while Trump publicly considered Maxwell's pardon documented in Exhibit A-10, proving systematic criminal enterprise coordination across legislative and executive branches using immunity decisions to serve appointing authority protection rather than public accountability, violating constitutional due process requirements for neutral decision-makers.

290. Plaintiff suffers constitutional injury from prosecutorial capture that transcends Nixon's firing of prosecutors by maintaining facade of proper legal process while ensuring prosecutorial decisions serve appointing authority rather than public interest. This hidden constitutional crisis appears legitimate while being systematically corrupt, proving systematic capture of justice system through appointment power that enables ongoing criminal enterprise operation through compromised prosecutorial decisions.

### F. Contemporary Criminal Enterprise Evidence During Complaint Preparation

291. Plaintiff suffers immediate and ongoing harm from systematic criminal enterprise operation including Trump's recorded criminal associate protection confession documented in Exhibit A-5 stating "we don't want people to get hurt. You can't have people associated..." combined with immediate deflection to blame "bad people like Comey," proving systematic criminal motivation coordinated with Johnson's

constitutional duty abandonment requiring immediate judicial intervention to prevent continued criminal enterprise expansion.

292. Plaintiff suffers systematic constitutional framework collapse where governmental branches coordinate using fraudulent evidence assessments while simultaneously validating evidence accuracy. Trump's authentication of victim testimony in Exhibit A-6 stating "I think she worked at the spa...Yeah, he's stole her. And by the way, she had no complaints about us" while FBI claims identical evidence lacks credibility proves systematic criminal coordination using governmental authority for criminal protection rather than constitutional compliance, requiring immediate judicial intervention.

293. Plaintiff suffers ongoing harm from Maxwell's immediate transfer to minimum-security prison following cooperation about "100 names" while Trump simultaneously considered her pardon, creating perfect quid pro quo validation coordinated with Johnson's constitutional duty abandonment. Trump's August 5, 2025 response documented in Exhibit A-10 denying knowledge while providing extensive unprompted justification proves consciousness of systematic coordination requiring defensive explanation rather than legitimate governmental ignorance.

### G. Emergency Constitutional Circumstances Requiring Immediate Relief

294. Each day Johnson continues coordinating with executive branch to prevent constitutional oversight enables ongoing criminal enterprise operation through systematic protection of sexual predator networks while children remain vulnerable to continued exploitation. Trump's systematic recruitment operations spanning decades documented in Exhibit A-9, including his 2006 admission of hiring minors based on appearance while acknowledging compulsive inappropriate behavior through "alcoholism" comparison,

makes Johnson's constitutional duty abandonment protection of documented systematic criminal activity rather than legitimate governmental discretion, creating daily accumulating harm requiring immediate judicial intervention.

295. The enforcement asymmetry where constitutional compliance receives immediate arrest while constitutional violations receive governmental protection proves constitutional structure has collapsed beyond normal judicial deference into active governmental corruption requiring emergency constitutional restoration. When constitutional procedure usage receives immediate enforcement while constitutional procedure violations receive protection, constitutional law has been completely inverted requiring immediate judicial restoration before systematic corruption becomes irreversibly normalized through continued governmental authority abuse.

296. This action succeeds through well-established criminal conspiracy statutes including **18 U.S.C. § 241** (conspiracy against constitutional rights), **18 U.S.C. § 371** (conspiracy to defraud United States), **18 U.S.C. § 1512** (obstruction of official proceedings), and **42 U.S.C. § 1983** (civil rights violations under color of law), providing independent federal jurisdiction for systematic governmental criminal activity documented through defendants' recorded admissions, academic validation of institutional DARVO methodology, and contemporary criminal enterprise operation documented through contemporaneous evidence, requiring immediate judicial intervention regardless of traditional precedential constraints.

297. Johnson's systematic violations create: (a) progressive constitutional architecture collapse that exponentially increases harm over time; (b) democratic process destruction that cannot be remedied retroactively; (c) rule of law breakdown through systematic

privilege creation; (d) ongoing child endangerment through sexual predator network

protection enabled by documented recruitment operations; and (e) systematic criminal

enterprise expansion through governmental authority abuse coordinated across legislative

and executive branches, all requiring immediate injunctive relief and criminal referral to

state prosecutors independent of compromised federal apparatus to prevent complete

constitutional framework destruction.

298. Plaintiff suffers concrete harm from Johnson's systematic democratic suppression

that extends far beyond immediate constitutional violations to permanent institutional

damage through authoritative misinformation that deters legitimate democratic

participation. Johnson's position as Speaker of the House and claimed expertise as

"constitutional law attorney" gives extraordinary weight to his systematic false legal

claims, creating systematic harm to: (1) Congressional Members (institutional

suppression) who abandon constitutional duties believing they lack legal authority; (2)

Citizens and Advocacy Groups (democratic participation suppression) who stop

demanding accountability believing legal remedies don't exist; (3) Legal Professionals

(professional community suppression) who provide incorrect advice based on false

authoritative information; and (4) Media and Investigators (information ecosystem

suppression) who don't investigate legal frameworks believing false expert analysis.

299. Johnson weaponizes professional credibility to spread systematic false legal

information that appears authoritative due to constitutional position and legal training,

seems definitive because of specific technical language, becomes accepted fact through

media repetition and expert positioning, and shapes public understanding of available

legal remedies and constitutional rights. This creates exponential harm beyond individual

constitutional violations by systematically convincing all democratic participants that constitutional accountability mechanisms are legally impossible when they are fully available and constitutionally required.

300. Johnson's chilling effect proves criminal enterprise methodology designed for immediate goals (prevent current oversight through procedural fraud, block specific investigations through false technical claims) and long-term criminal objectives (deter future accountability through authoritative misinformation, destroy public faith in constitutional remedies, create learned helplessness about democratic rights, establish precedent that constitutional duties are discretionary, train citizens to accept violations as legally inevitable). This systematic abuse of professional credibility constitutes coordinated misinformation campaign using professional authority to permanently disable democratic accountability mechanisms.

301. Plaintiff suffers systematic constitutional harm through institutional capture where: Legislative branch abandons duties thinking they lack authority; Executive branch avoids accountability knowing Congress won't act; Judicial branch doesn't receive proper cases due to systematic deterrence; and Citizens don't demand constitutional compliance believing it's impossible. This democratic process corruption causes Representatives elected to provide oversight to abandon constitutional duties, Voters to lose effective representation through representative misinformation, Constitutional framework to become meaningless through systematic non-enforcement, and Rule of law to collapse when authorities convince population no remedies exist.

302. Each day Johnson's false claims remain uncorrected causes exponential democratic harm through continued authoritative misinformation deterring legitimate constitutional

participation. This systematic democratic suppression cannot be remedied through monetary damages because it causes permanent institutional damage to democratic participation, constitutional understanding, and legal remedy accessibility that compounds daily through continued professional misinformation spread requiring immediate judicial correction to restore constitutional process functionality before democratic institutions are permanently disabled through systematic authoritative deception.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

### A. Declaratory Relief

1. **Article I & Separation of Powers**: Declare that Johnson's systematic cross-branch coordination to abandon Article I constitutional duties violates separation of powers and congressional independence requirements, creating constitutional crisis requiring immediate judicial intervention;

2. **Equal Protection & Due Process**: Declare that systematic enforcement discrimination punishing constitutional compliance while protecting constitutional violations creates two-tiered justice system violating Equal Protection and Due Process Clauses through arbitrary governmental action serving criminal associate protection;

3. Federal Transparency Laws: Declare that Johnson's coordination to circumvent FOIA disclosure requirements and Congressional Sunshine Act obligations violates individual

statutory rights, creating concrete injury with clear judicial remedies and attorney's fees provisions as proven through systematic exemption analysis in Appendix IV;

4. **Civil Rights Conspiracy**: Declare that systematic cross-branch conspiracy using documented DARVO methodology to abandon constitutional duties violates civil rights through coordinated governmental action denying effective representation and constitutional governance;

5. **Prosecutorial Capture**: Declare that Deputy Attorney General Blanche's financial dependency on Trump while making immunity decisions affecting former client violates Supreme Court precedent in *Young v. United States ex rel. Vuitton* requiring neutral prosecutors without financial interests compromising disinterested justice;

6. **Constitutional Enforcement Authority**: Declare that Article III requires judicial power extend to constitutional cases and prohibits standing doctrine rendering constitutional provisions non-justiciable, requiring citizen standing when constitutional impossibility prevents alternative challengers from accessing constitutional remedies;

7. **Constitutional Hierarchy & Architecture**: Declare that constitutional hierarchy requires judicial enforcement of constitutional text rather than constitutional nullification through procedural limitations, and that systematic constitutional violations require constitutional remedies through judicial enforcement rather than procedural avoidance;

8. **Dual Linguistic Fraud**: Declare that systematic manipulation of legal terminology to expand victim classifications beyond legal boundaries and filter congressional oversight through invented credibility standards violates constitutional duties, federal transparency laws, and separation of powers requirements;

9. **Democratic Process Protection**: Declare that procedural fraud through prevention of democratic voting despite supermajority control violates constitutional requirements for democratic process and legislative function;

10. **Systematic Criminal Associate Protection**: Declare that systematic recruitment operations targeting minors documented through defendant admissions require immediate constitutional oversight and cannot be protected through constitutional duty abandonment or cross-branch coordination for criminal associate protection;

11. **Contemporary Criminal Enterprise Validation**: Declare that Trump's recorded admission of protecting "people associated" rather than victims renders any "victim protection" justifications for Johnson's constitutional duty abandonment systematic fraud requiring immediate cessation and constitutional compliance;

### B. Injunctive Relief

12. **Prohibit Cross-Branch Coordination**: Issue permanent injunction prohibiting Johnson from coordinating with executive branch to abandon Article I duties and requiring congressional independence in all oversight and legislative functions;

13. **Require Equal Constitutional Treatment**: Issue mandatory injunction prohibiting two-tiered justice system and requiring equal application of constitutional enforcement regardless of political connection or wealth;

14. **Mandate Transparency Compliance**: Issue permanent injunction requiring immediate compliance with FOIA and Congressional Sunshine Act without cross-branch coordination to circumvent statutory disclosure obligations;

15. **Cease Criminal Conspiracy**: Issue permanent injunction prohibiting systematic cross-branch conspiracy to deny civil rights and requiring restoration of democratic voting procedures and representative legislative function;

16. **Ensure Prosecutorial Neutrality**: Issue mandatory injunction requiring neutral prosecutors per Supreme Court precedent and prohibiting immunity decisions by officials with financial dependency on subjects of investigation;

17. **Restore Congressional Oversight Mechanisms**: Issue mandatory injunction requiring immediate appointment of congressional oversight boards including Office of Congressional Conduct, restoration of all accountability mechanisms, and cessation of systematic obstruction of ethics investigations and corruption complaint processing;

18. **Prohibit Executive Credibility Gatekeeping**: Issue permanent injunction requiring congressional independence in credibility determinations and prohibiting acceptance of executive branch credibility gatekeeping over authentic government documents, ensuring Congress exercises independent fact-finding authority for Article I oversight purposes;

19. **Emergency Constitutional Restoration**: Issue immediate temporary restraining order ceasing ongoing constitutional violations including cross-branch coordination, systematic evidence manipulation, and criminal enterprise operation documented through defendants' recorded admissions;

20. Prohibit Bondi Professional Capture: Issue permanent injunction prohibiting Bondi from systematic abandonment of legal standards she demonstrably understands and requiring consistent application of correct legal analysis independent of political coordination;

21. Cease Retaliatory Prosecution: Issue mandatory injunction prohibiting Bondi from retaliatory ethics complaints and prosecutorial actions against judicial officers exercising constitutional duties and warning of constitutional crisis;

22. Restore Prosecutorial Neutrality: Issue permanent injunction requiring Bondi to apply prosecutorial authority consistently regardless of political coordination and prohibiting discriminatory enforcement serving criminal associate protection;

23. Prohibit Constitutional Intimidation: Issue immediate injunction preventing Bondi from using prosecutorial authority to silence constitutional warnings or intimidate judicial constitutional enforcement;

24. **Prevent FBI Constitutional Usurpation**: Issue immediate temporary restraining order preventing further criminal enterprise activity including FBI constitutional usurpation through invented authority claims and systematic evidence manipulation coordinated with legislative oversight prevention;

25. **Prohibit Prosecutorial Capture**: Issue immediate temporary restraining order preventing continued prosecutorial capture through financial dependency relationships that violate Supreme Court precedent requiring prosecutors without "any interest, financial or otherwise, that might compromise the disinterested pursuit of justice";

### C. Discovery Relief

26. Order expedited discovery on emergency basis regarding:

    a. **Cross-Branch Coordination Evidence**: All communications, coordination protocols, and strategic planning between legislative and executive

branches regarding systematic abandonment of Article I duties, oversight prevention, and constitutional independence violations;

b. **Enforcement Discrimination Documentation**: All evidence of systematic constitutional enforcement asymmetry including Texas Democrats prosecution for constitutional compliance versus Johnson protection for constitutional violations, RICO prosecution disparities, and procedural fraud in committee operations;

c. **Transparency Law Circumvention**: All documents regarding FOIA violation coordination, Congressional Sunshine Act circumvention, committee cancellations to prevent oversight, and systematic disclosure prevention through cross-branch cooperation;

d. **Criminal Conspiracy Coordination**: All evidence of systematic civil rights conspiracy including DARVO methodology implementation, cabinet-level linguistic coordination, victim terminology manipulation training, and coordinated constitutional duty abandonment serving criminal associate protection;

e. **Prosecutorial Capture Evidence**: All documentation of Blanche conflict violations, Maxwell immunity coordination, financial dependency relationships, recusal failures, and systematic violations of Supreme Court precedent requiring prosecutorial neutrality;

f. **Contemporary Criminal Enterprise Evidence**: All documents and communications regarding real-time criminal enterprise operation

including complete audio/video records of Trump's "people associated" admission, Maxwell prison transfer coordination, and systematic criminal activity during constitutional complaint preparation;

g. **Trump's Authentication of Victim Testimony**: All documents proving Trump's validation of victim accounts contradicting FBI credibility assessments, including victim testimony records, Trump's admissions about personal knowledge, and systematic suppression of authentic testimony validated by the accused himself;

h. **Executive Intimidation of Judicial Constitutional Enforcement**: All communications regarding Attorney General Bondi's ethics complaints against federal judges expressing constitutional crisis concerns, demonstrating coordinated suppression of constitutional enforcement across all three branches;

i. **Supreme Court Precedent Violation Documentation**: All evidence regarding systematic violation of Supreme Court precedent requiring neutral prosecutors including *Young v. Vuitton* analysis, financial dependency documentation, and communications proving consciousness of constitutional violations requiring criminal referral;

### D. Monetary Relief

27. Award compensatory damages for constitutional and statutory violations in amount to be determined at trial;

28. Award punitive damages against Johnson individually for willful cross-branch coordination constituting systematic criminal conspiracy using governmental authority to protect sexual predator networks;

29. Award punitive damages for systematic destruction of democratic process through procedural fraud and autocratic process termination;

30. Award punitive damages for dual linguistic fraud designed to protect criminal associates through manipulation of legal terminology;

31. Award punitive damages against Bondi individually for systematic professional capture constituting criminal conspiracy using legal authority to protect criminal associates through deliberate reversal of her own correct legal analysis;

32. Award punitive damages against Bondi for retaliatory prosecution violating judicial independence and constitutional accountability mechanisms;

33. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 5 U.S.C. § 552(a)(4)(E);

### E. Emergency Relief

34. Grant immediate temporary restraining order based on defendants' recorded admissions of ongoing constitutional violations including Johnson's executive coordination abandoning Article I duties (Exhibit A-4) and Trump's criminal associate protection motivation (Exhibit A-5) requiring immediate judicial intervention;

35. Grant immediate judicial intervention based on logical and sufficient proof of criminal intent through Johnson's 100% false technical claims combined with logical impossibility of legitimate constitutional coordination with factual deniers. Johnson's

professional fraud using systematic false legal analysis while representing constitutional expertise proves ongoing criminal enterprise using governmental authority requiring immediate cessation. The statistical impossibility of comprehensive professional failure without criminal intent combined with real-time criminal enterprise operation documented through contemporaneous evidence creates constitutional emergency requiring immediate judicial intervention before criminal enterprise consolidation becomes irreversible through continued governmental authority abuse.

36. Order immediate referral to state prosecutors outside federal control for criminal prosecution of systematic obstruction of justice, civil rights conspiracy, and constitutional violations documented through contemporary criminal enterprise evidence independent of compromised federal apparatus;

37. Order immediate criminal referral based on Supreme Court precedent violations proving Todd Blanche's prosecutorial decisions violate constitutional due process requirements for neutral decision-makers, requiring prosecution independent of compromised federal apparatus;

38. Grant immediate emergency relief based on systematic democratic suppression through professional misinformation where Johnson's false technical claims create ongoing exponential harm through continued authoritative misinformation that permanently deters legitimate democratic participation by convincing citizens, representatives, and legal professionals that constitutional remedies are legally impossible when fully available;

39. Order immediate correction of systematic misinformation through court declaration that Johnson's systematic false technical claims constitute professional fraud violating

Model Rules 1.1 and 8.4(c), requiring public correction to prevent continued democratic suppression through authoritative deception about constitutional remedy availability;

40. Grant emergency relief preventing Johnson's continued weaponization of professional credibility to spread systematic false legal information that shapes public understanding of constitutional rights and available legal remedies, creating chilling effects that systematically suppress democratic participation across all institutional levels;

41. Order immediate judicial intervention to restore democratic process functionality before systematic authoritative misinformation permanently disables constitutional accountability mechanisms through coordinated professional deception convincing all participants they are legally powerless when constitutional remedies remain fully available.

## F. Additional Relief

42. Grant trial by jury on all issues so triable;

43. Retain jurisdiction to ensure compliance with injunctive relief and constitutional governance restoration;

44. Establish ongoing judicial monitoring preventing future cross-branch coordination violations and ensuring permanent restoration of constitutional independence within separation of powers requirements;

45. Award such other relief as this Court deems just, proper, and necessary to vindicate constitutional governance, restore separation of powers compliance, and prevent continued criminal enterprise operation through systematic coordination across branches of government;

46. **Article III Standing Validation**: Having established jurisdiction and venue, Plaintiff demonstrates Article III standing through Supreme Court precedent in *Bond v. United States* supporting individual standing to challenge structural constitutional violations when executive usurpation disrupts constitutional balance through systematic cross-branch coordination.

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to **Federal Rule of Civil Procedure 38**.

**Respectfully submitted,**

**JOSEPH KIRCHNER**

*Pro Se Plaintiff*

4440 Parklawn Avenue #203

Edina, MN 55435

legal@lawsofexistence.com

(612) 552-2122

Dated: August 19, 2025

## VERIFICATION

I, JOSEPH KIRCHNER, declare under penalty of perjury that I have read the foregoing Complaint and that the facts alleged therein are true and correct to the best of my knowledge, information, and belief.

Executed on August 19, 2025

**JOSEPH KIRCHNER**

*Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Complaint was served upon the following parties by the method indicated:

**MIKE JOHNSON**

Speaker of the House

U.S. House of Representatives

H-232, The Capitol

Washington, DC 20515

**UNITED STATES ATTORNEY**

District of Columbia

555 Fourth Street, N.W.

Washington, DC 20530

**ATTORNEY GENERAL OF THE UNITED STATES**

U.S. Department of Justice

950 Pennsylvania Avenue, N.W.

Washington, DC 20530-0001

**METHOD OF SERVICE:**

☐ Personal service by authorized process server

☐ Certified mail, return receipt requested

☐ Electronic service through CM/ECF system (if available)

**JOSEPH KIRCHNER**

4440 Parklawn Avenue #203

Edina, MN 55435

legal@lawsofexistence.com

(612) 552-2122

Dated: _____

138

## ATTACHMENTS

### EXHIBITS - SERIES A: RECORDED ADMISSIONS & TRANSCRIPTS

**EXHIBIT A-1**: Johnson Criminal Conspiracy Confessions July 22, 2025

**EXHIBIT A-2**: Johnson Constitutional Impossibility Interview (Major Garrett)

**EXHIBIT A-3**: Johnson FOX News Executive Coordination Evidence

**EXHIBIT A-4**: Johnson Meet the Press Executive Coordination Admission July 27, 2025

**EXHIBIT A-5**: Trump Criminal Associate Protection Admission August 1, 2025

**EXHIBIT A-6**: Trump Victim Testimony Authentication FOX July 29, 2025

**EXHIBIT A-7**: Trump Cabinet Meeting Deflection July 9, 2025

**EXHIBIT A-8**: Trump Implausible Cover Story Documentation

**EXHIBIT A-9**: Trump 2006 Recorded Youth Targeting Admissions

**EXHIBIT A-10**: Trump Maxwell Prison Transfer Response August 5, 2025

**EXHIBIT A-11**: Trump Congressional Seat Entitlement Claims August 5, 2025

**EXHIBIT A-12**: Bondi Criminal Associate Protection Statement Nov 22, 2024

**EXHIBIT A-13**: Johnson CNN Intellectual Consistency Claims July 30, 2025

**EXHIBIT A-14**: Johnson KSDK Coordination Evidence July 16, 2025

**EXHIBIT A-15**: Vance Transparency Statement July 28, 2025

**EXHIBIT A-16**: Trump/Vance Hoax Declaration August 7, 2025

**EXHIBIT A-17**: Bondi Redaction Discussion February 27, 2025

**EXHIBIT A-18**: Duffy Transportation Committee Testimony July 16, 2025

**EXHIBIT A-19**: Trump Claims Epstein as a Hoax July 16, 2026

### EXHIBITS - SERIES B: CONGRESSIONAL/ADMINISTRATIVE EVIDENCE

**EXHIBIT B-1**: Gaetz Ethics Report Suppression Documentation

**EXHIBIT B-2**: Congressional Conduct Office Appointment Sabotage

**EXHIBIT B-3**: Inspector General Firing Timeline

**EXHIBIT B-4**: House Rules Committee Procedural Requirements

**EXHIBIT B-5**: Unsigned DOJ Memo July 7, 2025

**EXHIBIT B-6**: DOJ Memo July 7, 2025 Review

## <u>EXHIBITS - SERIES C: LEGAL/PROCEDURAL DOCUMENTATION</u>

**EXHIBIT C-1**: DOJ Ethics Complaint Against Judge Boasberg

**Exhibit C-2**: Electronic Freedom of Information Act Documentation

**EXHIBIT C-3**: FBI Crime Report Refusal Transcripts

**Exhibit C-4**: Massie-Khanna H.R. 581 resolution

## <u>EXHIBITS - SERIES D: ACADEMIC/RESEARCH EVIDENCE</u>

**EXHIBIT D-1**: DARVO Academic Research (Harsey & Freyd)

## <u>APPENDICES - CONSTITUTIONAL & LEGAL ANALYSIS</u>

**APPENDIX I**: Constitutional Justiciability Crisis Analysis

**APPENDIX II**: Ninth Amendment Constitutional Analysis

**APPENDIX III**: Legal Authority and Precedent Analysis

**APPENDIX IV**: Systematic Violation of Federal Transparency Requirements